**STATE of Tennessee, Appellee,**

v.

**Gene E. NIXON and William E. Wild, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 22, 1983.

Permission to Appeal Denied by the Supreme Court Nov. 7, 1983.

---

**1.** Although this fact does not appear in the record it was conceded by the Plaintiff at oral argument.

Randy G. Rogers, Athens, Leroy Phillips, Jr., Chattanooga, for appellants.

William M. Leech, Jr., Atty. Gen. & Reporter, Wayne E. Uhl, Asst. Atty. Gen., Nashville, Richard Fisher, Dist. Atty. Gen. (former), Kenneth Miller (former) Asst. Dist. Atty. Gen., Cleveland, Jerry N. Estes, Dist. Atty. Gen., Athens, William J. Brown, Asst. Dist. Atty. Gen., Cleveland, for appellee.

## OPINION

JAMES C. BEASLEY, Special Judge.

This matter is before us on a T.R.A.P. 9 interlocutory appeal to review the action of the trial court in denying the appellants' motion to dismiss on the grounds of former jeopardy.

The record reveals that Gene E. Nixon and William E. Wild were jointly indicted with Joe J. Wild, Jr. (now deceased) by the Bradley County Grand Jury for aggravated arson and related offenses. On motion of appellants venue was changed to Monroe County and the jury trial commenced on October 19, 1981, before the Honorable James C. Witt. The case went to the panel on the afternoon of October 22. Not long after it began deliberations, the jury reported through its foreman that no verdict could be reached. The judge instructed them to continue working and on two occasions prior to the jury retiring for the evening the foreman reported they were making some progress. On the morning of October 23 the jury sent word that it was ready to report. Before bringing the jury in and after conferring with counsel for the State and defense, Judge Witt declared a mistrial. On November 16, 1981, Judge Witt recused himself from further proceedings and transferred the venue of the case to Sullivan County.

Both appellants sought dismissal of the indictment on grounds of double jeopardy. After a full evidentiary hearing, the Honorable Edgar P. Calhoun filed a memorandum opinion and order, overruling each appellant's motion for dismissal and this appeal resulted.

The common-law rule, the Tennessee and the United States constitutional provisions against double jeopardy protect an accused from the peril of both a second punishment and a second trial for the same offense. *Whitwell v. State,* 520 S.W.2d

338 (Tenn.1975). The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). The Double Jeopardy Clause, however, does not offer a guaranty to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

In other words, there are recognized exceptions to the prohibition against double jeopardy. Among these are two dealing with the effect of the termination of a prior proceeding by mistrial which we deem applicable to the issues before us.

As noted by our Supreme Court in *State v. Knight,* 616 S.W.2d 593 (Tenn.1981):

"Retrial is also permissible, however, if the defendant through his counsel actively sought or consented to premature termination of the proceedings. *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Seiber v. State,* 542 S.W.2d 381, 385 (Tenn.Crim. App.1976). In such a case the accused has deliberately elected to forego his right to have guilt or innocence determined by the first trier of fact."

Even where the defendant moves for a mistrial, there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial. *See Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), wherein the United States Supreme Court in delineating the bounds of this exception more fully says:

"We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."

■ Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard enumerated in *United States v. Perez,* 22 (9 Wheat) U.S. 579, 6 L.Ed. 165 (1824); *Oregon v. Kennedy, supra.* Writing for this Court in *Arnold v. State,* 563 S.W.2d 792 (Tenn.Cr.App.1977), Judge Byers stated this second rule as follows:

"The general rule is that a jury may be discharged and a mistrial declared if there is a manifest necessity requiring such action by the trial judge. If it appears that some matter has occurred which would prevent an impartial verdict from being reached, a mistrial may be declared and a claim of double jeopardy would not prevail on a subsequent trial. *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)."

We will now sum up pertinent facts gleaned from this voluminous record to determine if a retrial would be contrary to their constitutional guarantees of being twice in jeopardy for the same offense.

The transcript of the proceedings in the original trial reflects that on October 23, 1981, the following motions and statements concerning a mistrial were made:

"GENERAL FISHER: Your Honor, at this time, and prior to bringing of the jury into the courtroom, the state would move that the Court declare a mistrial.

"THE COURT: Okay.

"MR. PHILLIPS: Please the Court on behalf of the defendant William Wild we join in that motion.

"MR. FINNELL: Your Honor, on behalf of the defendant Joe Wild we join in the motion too.

"MR. ROGERS: On behalf of my client Gene Nixon, Your Honor, I have no opposition to that motion."

It is readily apparent from the above that all parties agreed to the mistrial being entered.

Recognizing that a mistrial granted at the defendant's request or with his consent generally removes any double jeopardy bar to re-prosecution, the appellants argue they were induced and "goaded" into this action by misconduct of the original trial judge, prosecutor and court officer, who themselves created the basis for, and intended to provoke a mistrial.

It is urged that during a chamber's conference shortly before the mistrial was declared, certain false and inaccurate representations were made which influenced defense counsel in their decision to agree to the mistrial. If this conference was recorded, it has not been made a part of this record and is not available to us in that form. However, we have examined the transcript of the evidentiary hearing conducted by Judge Calhoun and find the extensive examination and cross examination of Judge Witt and Deputy Sheriff Connard Bibbons to reveal sufficient information for establishing what occurred with reference to the conference.

Connard Bibbons, a deputy sheriff with four years experience, was assigned to act as court officer with this sequestered jury. He testified that on Thursday night (the night before the mistrial) he overheard a juror make the statement, "These are big people we are dealing with; otherwise, why would John B. Strickland be here." While driving jurors to the motel, Officer Bibbons became convinced that one of them was frightened due to the juror's expressed concern over cars following them, his asking if the officer were going to check the rooms and finally asking if he (the juror) could take a blanket and sleep in the patrol car. Bibbons noted other jurors being tense and nervous. One of the female jurors screamed after hearing a noise and when asked if she was scared, responded, "Yes, I'm scared to death." Stating he had never encountered such a situation before, the court officer called Assistant District Attorney Steve Bebb, who in turn called and relayed the above information to Judge Witt at his home at approximately 10:00 p.m. Thursday night. Judge Witt instruct-

ed Mr. Bebb to have the officers check the rooms and to reassure and calm the jurors.

The next morning, Judge Witt was informed that the jury had indicated it was ready to report. Within a few minutes (at around 9:30 a.m.) Attorney Rogers came in and was told by the judge that the jury was ready to report but there had been a jury problem the night before. Mr. Rogers left and within a few minutes returned with Attorneys Phillips and Finnell. At that time Judge Witt reported to the three defense attorneys what had been told him the night before by Steve Bebb. District Attorney General Fisher and Sheriff Johnson joined the conference shortly before 10:00 a.m. Sheriff Johnson repeated what had been told him by Deputy Bibbons about the occurrences the night before.

It appears that in addition to what has been enumerated above, other reported incidents including mysterious knocks on juror's doors, a phone call to a female juror in the middle of the night, and when she was taken to the phone no one would speak and she became frightened. After discussing these matters and other problems connected with the trial, the record reflects that Judge Witt stated, "Gentlemen, under all these circumstances I'm going to go out there and declare a mistrial if all of you will agree to it."

As to the matter of consent, Judge Calhoun filed a memorandum opinion and order in which he found and held that all of the statements of the trial judge, the sheriff and court officer were based upon fact or good faith observations and opinion at the time. He found there was no evidence of judicial or prosecutorial impropriety nor bias on the part of the trial judge before the mistrial. It is well settled law that the trial judge's findings on questions of fact are to be given the weight of a jury's verdict and are conclusive on appeal unless the appellate court finds that the evidence preponderates against his judgment. *Clenny v. State*, 576 S.W.2d 12 (Tenn.Cr.App.1978). The burden is on the appellants to show that the evidence preponderates against the findings of the trial

court. *Goodner v. State*, 484 S.W.2d 364 (Tenn.Cr.App.1972). This they have failed to do.

Appellant Wild has devoted a great deal of time in his brief and oral argument seeking to establish misconduct on the part of the prosecutor in offering and misconduct on the part of the original trial judge in admitting "highly prejudicial and clearly incompetent hearsay evidence." We fail to see any causal connection between this evidentiary ruling and the mistrial based on suspected improprieties regarding the jury. It is obvious from the record that one of the most serious controversies between counsel for the state and defense involved the admissibility of taped conversations between Bruce Dobbins and Gladys Ophelia Smith. The defense had filed pre-trial motions seeking to exclude this evidence. After reviewing the tapes or transcripts, the trial judge held them to be admissible but excluded a sentence or two containing racial slurs. After the jury was sworn and before any proof was presented, the matter of the admissibility of this evidence was again brought up and discussed at length. After this evidence was presented to the jury, each defendant moved for a mistrial which was resisted by the State and denied by the trial judge. From the totality of these circumstances we determine this to have been an honest and sincere disagreement as to an evidence question rather than any attempt by the prosecutor or judge to provoke the defense into moving for a mistrial.

There would be few, if any, trials of such complexities which would not involve disagreements over evidentiary matters. Not only does the transcript of the original trial show such to have been the case here but it clearly reflects a number of instances where the defense prevailed including the admission or rejection of other evidence alleged to be hearsay.

■ The evidence in this record is adequate to support the conclusion that the appellants consented to this mistrial. It fails to establish any conduct on the part of the prosecution or the trial judge which was intended to provoke the defense into moving for or consenting to the mistrial as would bar retrial under *Oregon v. Kennedy, supra,* 456 U.S. p. 678–79, 102 S.Ct. p. 2091. Therefore, we hold that both appellants are subject to retrial under *State v. Knight,* 616 S.W.2d 593 (Tenn.1981).

In addition to those factors we have discussed in dealing with the issue of consent, there are other matters—some of which were not discovered until after the mistrial—which bring to focus the serious question as to the ability of this jury to reach an impartial verdict.

A few days before this trial was to commence, the entire jury venire had to be stricken because a juror was allegedly offered a bribe. It was learned after the mistrial that one of the jurors who actually sat on this case had shortly after being summoned received a phone call offering $5,000 to hang the jury. It was also learned that subsequent to the mistrial the jury foreman was contacted on three occasions by a mutual acquaintance of he and one of the Wild brothers, seeking to get him to change his testimony as to the jury's proposed verdict before the mistrial. Some members of this sequestered jury had been allowed to have phone calls and at least one visited with a relative during trial. Some of the jurors were fearful or at least concerned over the obvious efforts of John Strickland to show an interest in the case and friendship for the appellants. It appears that Mr. Strickland is a local person who is apparently well known in the community with a somewhat questionable reputation. Finally, the trial judge had before him the fact that during the voir dire proceedings on October 19, 1981, an unknown person from Chattanooga, where some of the appellants resided, was distributing a newspaper containing facts about the case to prospective jurors.

■ As noted in *Arnold v. Scott,* 563 S.W.2d 792 (Tenn.Cr.App.1977):

"The issue of whether a trial shall be allowed must be decided on the circumstances of each case within the discretion

of the trial judge, who must weigh the rights of the public to a fair and complete adjudication against the constitutional right of the accused to not be harassed, oppressed by successive trials or otherwise denied the protection of his constitutional rights.

*Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 61 L.Ed.2d 901 (1961). The exercise of this discretion is, of course, open to review by the appellate courts and, as said in *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), the case is reviewed on the basis that "we resolve any doubts in favor of liberty of the citizen."

Exercising his discretion, the trial judge has ordered a retrial of appellants having found the mistrial was required by manifold necessity resulting from a tainted jury. In reviewing this ruling, we find nothing in the record to indicate that it was erroneous.

We affirm the trial court's judgment in denying the motions to dismiss the indictment on grounds of former jeopardy and finding no bar to the retrial of either appellant, the cause is remanded to the Criminal Court of Sullivan County for trial on its merits.

DWYER and O'BRIEN, JJ., concur.