STATE of Tennessee, Appellee,

v.

James L. CARTER, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

July 13, 1994.

No Permission to Appeal Applied for to the Supreme Court.

A. C Wharton, Shelby Co. Public Defender and W. Mark Ward, Asst. Public Defender; and Loyce D. Lambert and Edward G. Thompson, Asst. Public Defenders, Memphis, for appellant.

Charles W. Burson, Attorney General & Reporter, Joel W. Perry, Asst. Atty. Gen., Crim. Justice Div., Nashville, and John W. Pierotti, Dist. Atty. Gen., Phyllis B. Gardner and David B. Shapiro, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

SUMMERS, Judge.

The appellant, James L. Carter, appeals from the judgment of the lower court holding that he can be retried for first-degree murder after the declaration of a mistrial. We granted the appellant's application for interlocutory appeal to determine whether a subsequent prosecution for the same charge is prohibited by the double jeopardy provisions of the state and federal constitutions.

We find that appellant can be retried. We modify the judgment of the lower court as to the use of aggravating circumstances should appellant be convicted and a death penalty phase ensue.

Appellant was indicted for first-degree murder. Prior to trial, problems arose con-

cerning the appellant's failure to provide notice of an alibi defense. There were several motions and counter motions in this regard. The record also reveals that on February 11, 1993, the prosecution served formal notice pursuant to Rule 12.3 of the Tennessee Rules of Criminal Procedure that it intended to seek the death penalty. The defense was informed that the state would rely on the aggravating circumstances of T.C.A. § 39–13–204(i)(2) (prior violent felony) and T.C.A. § 39–13–204(i)(5) (heinous, atrocious, or cruel murder). The state subsequently filed an amended notice informing appellant that it would rely upon T.C.A. § 39–13–204(i)(7) (felony murder) as an additional aggravating circumstance. Before the trial actually began, however, the court ruled that the prosecution had not timely filed the amended notice of aggravating circumstances, and could not use the felony murder aggravator.

The trial commenced on March 1, 1993. By March 4, the court had begun hearing the testimony of witnesses. On that day, the state announced that it had found a new witness by the name of Gerald Speed. The state explained that Speed, who was in the Shelby County jail, had notified the District Attorney's office that he wanted to talk to them. Interviewed on that day, Speed indicated that he witnessed the appellant and another man enter and leave the victim's residence on the day of the murder.

On March 5, the prosecution informed the trial judge and defense counsel that through other information received from Speed, it had recovered a .380 pistol belonging to the victim. The state believed that the pistol was the murder weapon. It asked the court's permission to have a ballistics test performed on the handgun and to allow Speed to testify at trial. In addition, the state announced that Speed had identified Michael Carrick as the man who entered the victim's apartment with the appellant. Carrick may have temporarily had possession of the .380 pistol on the day of the murder. Apparently, Carrick was already under subpoena by both the state and the defense.

During this series of developments, we learn that Speed and Carrick were represented by the Public Defender's office on other criminal charges. Because the appellant was also represented by the Public Defender's office, both sides agreed that independent counsel should be appointed to represent the two men.

The appellant's attorneys complained to the court about all of the new developments. They argued that the large amount of newly-discovered evidence during the trial phase of the proceedings was the result of prosecutorial neglect. The prosecution denied neglect and advised the court that the appellant had a recently discovered alibi witness which had just been revealed to the state. Counsel for the appellant then informed the court that on March 1, 1993, an additional alibi witness had been discovered. The state expressed much concern about not having been informed of this witness.

About this time during the proceedings, one of the court officers announced that there was a bomb threat in the building. The record is not clear as to whether the jury was informed of the bomb threat.

As a result of the potential new witnesses and evidence, as well as the other matters before the court, the trial judge, *sua sponte*, declared a mistrial. The judge ruled as follows:

> To give the State and the Defense an opportunity to get their cases ready for trial and to bring all witnesses before the Court, it appears a witness has been untimely given to the State and also a witness has been untimely given to the Defense. And there is newly discovered witnesses and evidence that have been turned up during this trial.

> The Court will now declare a mistrial. The Court is disappointed in counsel for filing documents late and evidence coming in at a late hour in this case. And we'll now reset the trial—

The trial court later entered an order filed on March 18, 1993, that stated:

> The Court finds sua sponte because of newly discovered evidence and witnesses; that all parties will be prejudiced and a mistrial is declared in the interests of justice.

In April of 1993, the trial judge conducted a hearing on the appellant's motion to dismiss the indictment on the ground of double jeopardy. An investigator with the District Attorney's office testified that on March 4, 1993, Ms. Dorothy Boone informed the prosecution that her nephew, Gerald Speed, wanted to talk to personnel from the District Attorney's office. The investigator spoke with Speed who told him that he had information regarding the case. Speed expressed concern about his safety in jail and stated that he was afraid of the appellant. He also stated that he saw the appellant and Michael Carrick enter and leave the victim's apartment on the day of the murder. The investigator testified that Speed gave him information that allowed him to recover a handgun which was later determined to be the murder weapon. After the testimony, the trial judge denied the motion to dismiss the indictment. The court found that the granting of the mistrial was "manifestly necessary" because of the unique circumstances involved. The court continued its findings:

> The Court remembers that the State appeared to have other pertinent evidence brought up during the trial, and also the defendant filed an amended notice of alibi witnesses somewhere right before the trial got started.
>
> It appears to the Court that neither the defense nor the State were prepared to go forward after the jury was sworn, although some witnesses were heard and presented. Witnesses were placed on the record, and it appeared that this caused the Court some concern because the witnesses possibly needed some direction from an attorney, so the Court appointed lawyers to represent these witnesses due to the fact that they—that the time was needed for these lawyers to properly represent these witnesses, in the fact that they might be stating matters that would possibly put them in some jeopardy with the law.

We have entertained this appeal based upon the trial court's refusal to dismiss the indictment. Appellant contends that his retrial for first-degree murder is barred by double jeopardy. Obviously the state disagrees.

■ The Tennessee and United States constitutional provisions barring double jeopardy protect a criminal defendant from the perils of both a second punishment and a second trial for the same offense. *Whitwell v. State,* 520 S.W.2d 338, 341 (Tenn.1975). This does not mean, however, that every time a defendant is subjected to a trial before a competent tribunal he is entitled to go free if the trial fails to end in final judgment. *Wade v. Hunter,* 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *State v. Nixon,* 669 S.W.2d 679, 681 (Tenn.Crim.App.1983). This Court has recognized situations where a second trial can be imposed upon a criminal defendant after a mistrial has been declared. One such situation is where "manifest necessity" demanded a mistrial in the first instance. Where it appears to the court that some matter has occurred which would prevent the proceeding of a trial without manifest injustice to the defendant or the public, a mistrial may be declared, and a claim of double jeopardy would not prevail on a subsequent trial. *State v. Malouf,* 199 Tenn. 496, 287 S.W.2d 79, 82 (1956); *Arnold v. State,* 563 S.W.2d 792, 794 (Tenn.Crim.App. 1977).

> The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal."

*Oregon v. Kennedy,* 456 U.S. 667, 671–72, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982) (citations omitted).

■ The doctrine of manifest necessity prohibits the trial court from foreclosing the accused's valued right to have his initial trial concluded to a final judgment unless a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. *United States v. Dinitz,* 424 U.S. 600, 606–07, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976).

As our Supreme Court observed in *State v. Smith:*

[R]etrial will not be prohibited by double jeopardy principles where the ends of justice, under the circumstances, would otherwise be defeated, or where the circumstances show that a fair and unbiased trial could not be had, or where any unforeseen emergency, contingency, or happening after the empaneling of the jury prevents the trial from going forward according to orderly and established legal procedure. 871 S.W.2d 667, 672 (Tenn.1994); *see also, Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973).

■■■ The determination of whether a retrial should be allowed depends upon the circumstances of each case. *State v. Williams,* 827 S.W.2d 804, 808 (Tenn.Crim. App.1991). The trial court must weigh the right of the public to a fair and complete adjudication against the constitutional right of the defendant to be free from harassment and oppression by successive trials. *See Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961). The trial court's discretion in weighing these factors is open to review by the appellate courts. If the appellate courts do not find that the trial court abused its discretion in declaring the mistrial, then the court's ruling will not be disturbed on appeal. The degree of deference to be accorded the trial court's determination of manifest necessity, of course, varies with the circumstances of each case. *Arizona v. Washington,* 434 U.S. 497, 507–09, 98 S.Ct. 824, 831–32, 54 L.Ed.2d 717 (1978). Strict scrutiny is applied to the court's determination to grant a retrial where the accused claims that the mistrial was caused intentionally by the prosecution. On the other hand, much deference is accorded if the trial court finds that the jury was deadlocked or if the cause was neither party's fault. In any event, every case is different.

■ The Honorable John P. Colton, Jr., presiding judge, encountered a number of difficult problems when the revelations about Gerald Speed and the new alibi witness were presented to him. First, the trial judge had a sequestered jury, commonly called a "lock-up" jury in a death penalty case.[1] He did not know how long the trial would have lasted had it proceeded without the interjection of Speed's potential testimony and the newly-discovered evidence. However, death penalty cases traditionally entail lengthy trial proceedings, and the interjection of new witnesses and evidence could only prove to lengthen the process that much longer. Any long and uncertain delay could prove unreasonable, and possibly prejudicial, with a sequestered jury.

Speed was represented by the Public Defender's office as was Carrick. When the trial judge declared a mistrial, neither the state nor the defense knew whether Carrick, Speed, or both, would be state witnesses, defense witnesses, or co-defendants with the appellant. The trial judge was forced, by ethics as well as by requests from the prosecution and the defense, to appoint independent counsel outside of the Public Defender's office to represent both men. The judge obviously took into consideration the fact that newly-appointed counsel would spend a considerable amount of time interviewing Carrick and Speed regarding their respective involvement in the case. A prudent attorney appointed to represent a potential witness, or co-defendant, in a capital murder trial does not visit the issues involved in a cursory manner. Rather, the attorney interviews the client; looks over the prosecution's file, if available; interviews the prosecutors and defense attorneys; and interviews witnesses to determine his or her client's status prior to giving proper advice. That, simply put, takes a long time. And any delay is exacerbated by having a sequestered jury waiting for the judge to call them back to hear the case.

Another problem encountered by the trial court was the ballistics test and the inevitable delay that would result. Assuming the test showed that the pistol was the murder weapon, as it apparently did, the defense would likely want its own separate test, further delaying the proceedings. In addition

---

1. Tennessee Code Annotated Section 40–18–116 mandates sequestered jurors in death penalty cases.

to these problems, the court experienced a bomb threat.

 This Court is called on many times to determine whether or not a judge has abused his discretion. The trial judge in this case did not. We view an abuse of discretion as a judicial decision that cannot be justified in light of reason and evidence, or a decision which does not have any basis in law or in fact. We view an abuse of discretion as a decision that is arbitrary, capricious, unreasonable, and unconscionable. None of these factors fit the decision made by the trial judge in the present case.

 While we are of the opinion that the court did not abuse its discretion in declaring the mistrial, we do agree with appellant that the state should be precluded from using the felony murder aggravating circumstance in the event of a conviction of first-degree murder. The state should not be put in any better position based upon these circumstances than was the defense. Although we find no reported Tennessee cases that have decided this very question, we have no hesitancy in so finding. The state would not have been allowed to use the felony murder aggravator had the trial in the first instance gone on to conclusion. Fundamental fairness dictates that the state should not be able to use the felony murder aggravator in the second trial. Because of the high stakes involved in a capital case, and because death is different, we find that the state is prohibited from using the additional aggravator of felony murder should the case on retrial enter into a death penalty sentencing phase. As the New Jersey Supreme Court stated in *State v. Coyle:*

> The State's pretrial notice of [aggravating factors] asserted only that the murder involved "depravity of mind." Although the notice did not include the "torture" or "aggravated battery" aspects of [the rule], the State now contends that it should be able to submit those elements to the jury.

\* \* \* \* \* \*

Fundamental-fairness and double-jeopardy concerns impinge on the State's right to submit aggravating factors on retrial. We need not, however, consider double-jeopardy implications here because fundamental fairness bars the State from asserting "torture" and "aggravating battery" on retrial. Because of the stakes involved in a capital case, we compel the State "to offer all its proofs of any applicable aggravating factor against the defendant at his or her first trial." Unless the State proves "that it has discovered new evidence sufficient to establish ... a new aggravating factor and that such evidence was unavailable and undiscoverable at the original trial despite the State's diligent efforts," it cannot submit that evidence at retrial.

119 N.J. 194, 574 A.2d 951, 972–73 (1990) (citations omitted).

## CONCLUSION

The judgment of the trial court denying appellant's motion to dismiss the indictment is affirmed. The appellant, James L. Carter, will be retried for murder in the first degree. The judgment is modified to the extent that the prosecution will not be allowed to use the amended aggravating circumstance that was originally disallowed by the trial court. The judgment, therefore, is affirmed, but modified consistent with this opinion.

SCOTT, P.J., and LYNN W. BROWN, Special Judge, concur.