**STATE of Tennessee, Appellee,**

v.

**Samuel C. TAYLOR, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

June 13, 1995.

Permission to Appeal Denied by Supreme Court Dec. 4, 1995.

**184**

Karl Dean, Public Defender, Jeffrey A. DeVasher, Asst. Public Defender (on appeal), Ralph Newman and Wendy S. Tucker, Asst. Public Defenders, Nashville (at trial), for Appellant.

Charles W. Burson, Attorney General & Reporter, Amy L. Tarkington, Asst. Attorney General, Nashville, Victor S. Johnson, III, District Attorney General, Kymberly Hattaway, Don Hemmelburg and Ron Miller, Asst. District Attorneys General, Nashville, for Appellee.

## OPINION

PEAY, Judge.

In January 1994, the defendant was indicted on two counts of aggravated rape, one

count of attempt to commit aggravated rape and one count of coercion of a witness. A jury trial commenced on February 7, 1994; however, the trial court sua sponte granted a mistrial after a juror informed the court that due to a severe ice storm the road on which she lived was impassable; therefore, she did not know when she could arrive to continue deliberation. On February 22, 1994, the defendant filed a motion to dismiss the indictment on double jeopardy grounds. The trial court denied the defendant's motion but granted Rule 9 permission to appeal. In this appeal the defendant raises the sole issue of whether the trial court erred in denying his motion to dismiss. Following our review, we affirm the trial court's decision and find that the defendant may be retried.

The record reveals that jury deliberations began on February 9, 1994. The jury was discharged at 2:00 p.m. on Thursday, February 10, due to inclement weather and was told to return on Friday at 10:00 a.m. to continue deliberation. However, at approximately 8:00 a.m. on Friday morning, Juror Doris I. McCloud telephoned the judge's office to inform him that due to the severe ice storm, the public street by her residence was impassable. Ms. McCloud indicated that she planned to be present for continued deliberations but could not offer a time frame in which she would arrive. A court officer phoned the fire department and was informed that traffic was not being allowed to proceed in that area and that it could take hours or days before traffic flow would be normal. As an indication of just how severe the road conditions were, the fire department informed the court officer that one of their trucks had been off the road since 6:00 p.m. on Thursday night due to the severe conditions.

The trial judge informed the attorneys of the circumstances and asked defense counsel if the defendant would like to waive his right to a twelve person jury and proceed without Ms. McCloud. This option was refused by the defendant. One of the attorneys proposed that the deliberations resume on Monday but the court reasoned that because the jurors' service time expired on Saturday, it desired not to extend that period. After examining these options, defense counsel stated, "I guess you'll have to declare a mistrial." Shortly after 10:00 a.m. and faced with the uncertainty of Ms. McCloud's arrival, the trial judge declared a mistrial without objection from the prosecution or defense. Ms. McCloud arrived at approximately 10:30 a.m. and was told that a mistrial had been declared.

 The defendant's sole claim is that double jeopardy bars a retrial; therefore, the trial judge erred in denying his motion to dismiss the indictment. The rule in Tennessee is well settled that constitutional provisions against double jeopardy protect an accused from the peril of a second punishment and a second trial for the same offense. *Whitwell v. State*, 520 S.W.2d 338, 341 (Tenn. 1975). There are recognized exceptions, however, to this prohibition against double jeopardy. One of these exceptions applies when the defendant has actively sought or consented to the mistrial unless he was "goaded" into requesting a mistrial. *State v. Nixon*, 669 S.W.2d 679, 681 (Tenn.Crim.App. 1983). Another exception to the prohibition against double jeopardy exists when there is a "manifest necessity" for a mistrial. If it appears that some matter has occurred which would prevent an impartial verdict from being reached, a mistrial may be declared and a claim of double jeopardy would not prevail on a subsequent trial. *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn.Crim.App. 1977). A manifest necessity is most often found when a jury is unable to reach a verdict.

 The issue of whether a retrial shall be allowed must be decided on the circumstances of each case and is within the discretion of the trial judge. The trial judge must weigh the rights of the public to a fair and complete adjudication against the constitutional right of the accused not to be harassed, oppressed by successive trials, or otherwise denied the protection of his constitutional rights. The exercise of this discretion by the trial judge is reviewed by resolving any doubts in favor of the liberty of the citizen. *State v. Eva Jean Brown*, No. 1167, 1988 WL 136600 (Tenn.Crim.App. filed December 20, 1988, at Knoxville).

■ The jury can be discharged with a plea of former jeopardy being valid when it is impossible to proceed without manifest injustice to the public or the defendant himself. *State v. Malouf,* 199 Tenn. 496, 287 S.W.2d 79, 82 (1956). It is the duty of the prosecutor to shoulder the burden of justifying the mistrial in order to avoid the double jeopardy bar. The prosecution must demonstrate the manifest necessity for and lack of feasible alternatives to the mistrial, even though it was granted sua sponte, if the defendant is to be again tried. *State v. Eva Jean Brown,* No. 1167 (Tenn.Crim.App. filed December 20, 1988, at Knoxville).

■ In the present case we examine the circumstances surrounding the declaration of a mistrial to determine if the defendant in essence consented to the mistrial or whether a manifest necessity existed to justify the mistrial. Initially, the State contends that the defendant, in effect, consented to the mistrial by not openly objecting at trial. When the juror did not show up at the designated time, the trial judge announced that due to the juror's absence he was declaring a mistrial. The prosecutor asked the judge to let the record reflect that the defendant consented to the mistrial. However, the trial judge responded that neither party had consented but that he was granting the mistrial sua sponte. Citing *State v. Wilkins,* 749 S.W.2d 753 (Tenn.Crim.App.1988), the State argues that even though the judge sua sponte declared the mistrial, the defendant in fact acquiesced in it due to his failure to raise an objection. In *Wilkins,* the trial court declared a mistrial after the court reporter witnessed an incident during lunch recess where an opinionated courtroom observer made remarks in the presence of the jurors. *Wilkins,* 749 S.W.2d at 756. The *Wilkins* court held that the "appellants, through counsel, conceded what happened and did not oppose the mistrial, but acquiesced in it;" therefore, it was unnecessary to find a manifest necessity. *Wilkins,* 749 S.W.2d at 756. While *Wilkins* provides a convincing argument for the State's position, we do not agree that the defendant in the instant case acquiesced in the mistrial. In fact, the trial judge's statement that neither party consented to the mistrial dissolves the State's first argument.

■ Finding that the defendant did not consent to the mistrial, we must now address the State's alternative argument that even if the defendant did not acquiesce in the mistrial, a manifest necessity justified it. Our Supreme Court has recognized a number of conditions that will warrant the discharge of the jury and will bar a plea of double jeopardy. In *Malouf,* our Supreme Court held that among other conditions the "absence of a juryman" warrants the declaration of a mistrial and nullifies a plea of double jeopardy. *Malouf,* 287 S.W.2d at 82. In the present case, the jurors were instructed to return on Friday morning at 10:00 for continued deliberation. Due to a severe ice storm, Ms. McCloud informed the court early Friday morning of her uncertainty as to when she might arrive. The trial judge called the prosecutor and defense counsel together to discuss the options available to them. None of the alternatives were acceptable to the parties; therefore, just past 10:00 a.m. Friday morning the trial judge declared a mistrial due to the juror's absence. We think the State has met its burden of showing that a manifest necessity existed to justify the declaration of a mistrial. Further, we find that the trial judge acted properly within his discretion based upon the circumstances known to him at that time.

The defendant insists that because the juror stated that she would be there the court should have given the juror more time to arrive. The defendant points to the record which reflects that the juror arrived at approximately 10:30 a.m. to support his argument that other alternatives were available. Nonetheless, we cannot in hindsight second-guess the trial judge's decision based upon what he knew when he declared the mistrial. The record indicates that the juror's relatively early arrival surprised all parties involved. We find that the juror's absence justified the trial court's decision and that the defendant may be retried.

The judgment of the trial court is affirmed.

WADE, J., and REX HENRY OGLE, Special Judge, concur.