# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## SEPTEMBER 1999 SESSION



**FILED**

December 21, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,            )
                              )
        Appellee,             )
                              )   NO. W1998-00531-CCA-R3-CD
VS.                           )
                              )   TIPTON COUNTY
                              )
KENNETH A. ADAMS and          )   HON. JOSEPH H. WALKER,
JEREMIAH A. LEAVY             )   JUDGE
                              )
        Appellants.           )
                              )   (First Degree Murder, Aggravated
                              )   Robbery, Especially Aggravated
                              )   Kidnapping)
                              )

**FOR THE APPELLANTS:**

**GARY F. ANTRICAN**
District Public Defender
(For Appellant Adams)

**DAVID S. STOCKTON**
Assistant Public Defender
P.O. Box 700
Somerville, TN 38068-0700
(For Appellant Adams)

**FRANK M. DESLAURIERS**
214 W Pleasant
P.O. Box 1156
Covington, TN 38019
(For Appellant Leavy)

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**R. STEPHEN JOBE**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**ELIZABETH T. RICE**
District Attorney General

**JAMES WALTER FREELAND**
Assistant District Attorney General
302 Market Street
Somerville, TN 38068

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY, JUDGE**

**OPINION**

Upon transfer to circuit court for treatment as adults, juvenile defendants Kenneth A. Adams and Jeremiah A. Leavy were convicted by a Tipton County jury for the premeditated first degree murder, felony murder, aggravated robbery, and especially aggravated kidnapping of James Terry, Sr.[1]  In this appeal as of right, defendants challenge:

1. whether their pre-trial detention without bond rendered the subsequent prosecution, conviction and sentencing a violation of double jeopardy and/or due process; and

2. whether the evidence was sufficient to support the convictions for premeditated first degree murder and/or felony murder.

Upon our review of the record, we find no error and **AFFIRM** the judgment of the trial court.

**I. FACTS**

On April 27, 1997, at approximately 11:00 a.m., juvenile defendants Adams and Leavy, along with two adult co-defendants, entered the 71-year-old victim's home.  They intended to steal a large amount of money rumored to be kept in the house.  After fruitlessly ransacking the residence, they sat down to watch basketball on television and await the victim's return.  Sometime shortly before 2:00 p.m., the victim returned from visiting his convalescent wife in a nursing home.

When the victim entered the kitchen, the four young men ambushed him.  The adults bound the victim's hands and feet with coat hangers and duct tape.  Then, he was placed in the bathtub, which the perpetrators previously filled with water and kerosene.  Before leaving, they covered the victim with various blankets, drapes, and pieces of furniture.  The victim died of asphyxia.

The juvenile and adult defendants took twenty dollars from the victim's wallet, a microwave oven, and a kerosene space heater.  They left in the victim's car shortly after 2:00 p.m. and spent the afternoon driving around eating snacks

---

[1]At sentencing, the trial court properly merged the two murder convictions and imposed a single life sentence upon each defendant.

purchased with the victim's money. They abandoned the car in a muddy field after getting stuck and hitchhiked back home sometime between 4:00 and 4:30 p.m.

Subsequently, both juvenile defendants gave statements admitting their involvement in the crimes. Authorities took the juveniles into custody on April 28, 1997. The juvenile court entered a detention order on May 1, 1997. On June 3, 1997, the juvenile court conducted the first of two transfer hearings and transferred the juveniles to circuit court on the charges of premeditated first degree murder, felony murder, and aggravated robbery. The juvenile court ordered that both juveniles be held without bond. At a second transfer hearing, conducted July 3, 1997, the juvenile court transferred the juveniles to circuit court on the charge of especially aggravated kidnapping.[2] At the close of the second hearing, the juvenile court again refused to set a bond for defendants. However, at their appearance in circuit court on July 18, 1997, the trial judge set $100,000 bonds for each.

## II. DOUBLE JEOPARDY / DUE PROCESS

In their first issue, defendants claim the trial court erred by failing to dismiss the indictment against them for violation of their double jeopardy and due process rights. Defendants contend the juvenile court was required to set bond upon their transfer to circuit court. *See* Tenn. R. Juv. P. 24(b)(7). Defendants argue that their pre-trial detention without bond constituted punishment for the charged offenses which rendered subsequent prosecution, conviction, and sentencing a violation of double jeopardy and due process.

Authorities took defendants Adams and Leavy into juvenile custody on April 28, 1997. It appears from the record that the juvenile court held a "detention

---

[2]After hearing the proof on June 3, 1997, the state filed an additional juvenile petition charging defendants with especially aggravated kidnapping, under the incorrect assumption that the Grand Jury could indict defendants *only* on the offenses for which they were transferred. Although we note the juvenile court judge erred in re-asserting jurisdiction for purposes of the July 3, 1997, transfer hearing, *see* Tenn. Code Ann. § 37-1-134(c), any issue in this regard is moot since the Grand Jury indicted, and the defendants were convicted on all charged offenses.

3

hearing" soon thereafter. The record is silent as to whether the setting of bond was an issue at the detention hearing, but does reveal that defendants were on juvenile court probation in another county for aggravated burglary at the time of the present offenses.

The juvenile court denied defendants' request for a bond at both transfer hearings. In June, it refused because "the moment that they are transferred it terminates the jurisdiction of the Juvenile Court . . . it is now a Circuit Court matter." In July, it refused "because it is a first degree murder case and extremely heinous in nature."

On July 18, 1997, the circuit court set $100,000 bonds for each defendant.

## A. Double Jeopardy

Constitutional provisions against double jeopardy protect an accused from the peril of a second punishment and a second trial for the same offense. Whitwell v. State, 520 S.W.2d 338, 341 (Tenn. 1975); State v. Taylor, 912 S.W.2d 183, 185 (Tenn. Crim. App. 1995); State v. Carter, 890 S.W.2d 449, 452 (Tenn. Crim. App. 1994). However, jeopardy does not attach in a pre-trial proceeding unless defendant is "subject to 'criminal prosecution' and put to trial." State v. Johnson, 980 S.W.2d 414, 420 (Tenn. Crim. App. 1998)(citations omitted); *see also* State v. Pennington, 952 S.W.2d 420, 422-24 (Tenn. 1997).

Pre-trial detention does not result in the attachment of jeopardy barring prosecution on the charged offenses. Pennington, 952 S.W.2d at 423. If the detention's purpose is remedial rather than punitive, then double jeopardy is not implicated at all. Johnson, 980 S.W.2d at 420 (citations omitted).

We conclude that jeopardy did not attach as a result of the defendants' pre-trial detention. Furthermore, we note that the proper recourse for bond denial was to seek relief in circuit court. *See* Tenn. Code Ann. § 40-11-144(b).

In any event, this issue is without merit and does not warrant dismissal of the indictment against defendants.

4

## B. Due Process

Defendants next contend their pre-trial detention violates due process. Procedurally, authorities arrested defendants on April 28, 1997, one day after the offense. The juvenile court conducted a detention hearing on or about May 1, 1997. The first mention of any question regarding bail comes at the June 3, 1997, transfer hearing; the next is at the July 3, 1997, transfer hearing. Fifteen days later, the circuit court set a bond.

Due process prohibits punitive pre-trial detention, but permits remedial pre-trial detention provided the individual is afforded sufficient procedural due process. Pennington, 952 S.W.2d at 423; Johnson, 980 S.W.2d at 421. We find no procedural due process violation. Again, the proper remedy for the juvenile court's denial of bond was to seek relief in circuit court. Tenn. Code Ann. § 40-11-144(b). Furthermore, an erroneous bail determination does not give rise to a dismissal of the indictment. Johnson, 980 S.W.2d at 421.

This issue is without merit.

## III. SUFFICIENCY OF THE EVIDENCE

Next defendants aver the evidence was insufficient to support convictions for premeditated murder and felony murder.

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d

1, 19 (Tenn. Crim. App. 1996).  Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e);  Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L. Ed.2d 560 (1979);  State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

## A.  Premeditated First Degree Murder

Defendants argue that there is no evidence of a premeditated design to kill the victim in this case.  The applicable definition of first degree murder in this case is, "[a] premeditated and intentional killing of another."  Tenn. Code Ann. § 39-13-202(a)(1).  Premeditation necessitates "a previously formed design or intent to kill," State v. West, 844 S.W.2d 144, 147 (Tenn. 1992)(citations omitted), and "an act done after the exercise of reflection and judgment. . .[meaning] that the intent to kill must have been formed prior to the act itself."  Tenn. Code Ann. § 39-13-202(d).  It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id.*

Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing.  State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995).  Our Supreme Court delineated several circumstances that may be indicative of premeditation, including "the particular cruelty of the killing . . . preparations before the killing for concealment of the crime, and calmness immediately after the killing." Bland, 958 S.W.2d at 660 (citations omitted).

A defendant is criminally responsible for the conduct of another when "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense."  Tenn. Code Ann. § 39-11-402(2).

In this instance, all four defendants broke into the victim's house with the intent to steal.  Rather than leave when their search proved fruitless, they prepared for the elderly victim's return, filled the bathtub with water and kerosene, and

watched basketball on the victim's television. Upon the victim's return, the young men essentially hog-tied the victim, binding his hands and feet with coat hangers and duct tape, and connected his hands and feet with a leather belt. They placed him in the tub filled with water and kerosene and covered him so completely that several witnesses failed to see him when they looked directly at the tub. Afterward, the young men spent the day joyriding in the victim's car and hitchhiked home when it got stuck in the mud.

Taken in the light most favorable to the state, this evidence amply supports the conviction for premeditated first degree murder.

### B. Felony Murder

Next, defendants argue that the evidence is insufficient to support their conviction for felony murder since: (1) there is no showing that they acted "recklessly" within the meaning of the felony murder statute; (2) there is no evidence that the homicide occurred *during* the perpetration of burglary as alleged in the indictment; (3) the indictment alleges murder in the perpetration of a "burglary" rather than an "aggravated burglary;" and (4) the felony murder statute does not encompass aggravated burglary. We consider defendants' arguments to be without merit.

### 1. Reckless Behavior

Defendants claim they cannot be found to have engaged in reckless behavior since there was no proof that they were "aware of but consciously disregard[ed] a substantial and unjustifiable risk that the circumstances exist[ed] or the result [would] occur." This issue is without merit for two reasons.

One, the felony murder statute in effect at the time of this offense did not require a finding of recklessness. As amended in 1995, Tenn. Code Ann. § 39-13-202(b) now provides: "[n]o culpable mental state is required for conviction under subdivision (a)(2) [felony murder] . . . except the intent to commit the enumerated offenses or acts . . . ." *Id.* In this case, defendants admitted their intent to break into the victim's home to take money, i.e., the intent to commit aggravated burglary. This is sufficient to support a conviction for felony murder. The inclusion of "recklessly" in the indictment was surplusage. State v. Hopper, 695 S.W.2d 530,

7

535 (Tenn. Crim. App. 1985).

Two, we reject the defendants' claim that the victim's pre-existing medical conditions, which contributed to his demise, insulated them from a homicide conviction. The victim's physical condition is no defense. "One who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause." State v. Ruane, 912 S.W.2d 766, 775 (Tenn. Crim. App. 1995)(quoting Odeneal v. State, 157 S.W. 419, 421 (1913)). Regardless, the evidence clearly reveals active, and apparently willing, participation by the defendants in the activities which lead to the victim's death.

### 2. Killing In Perpetration of Burglary

Next, defendants claim that the evidence fails to show the homicide occurred *during* the perpetration of a burglary. We find defendants' argument overly technical, and are in accord with the state's argument that "the fact that the killing occurred after the burglary was technically completed does not make the killing collateral to the burglary." The killing may be considered "in perpetration of" the felony "so long as there is a connection in time, place, and continuity of action." State v. Buggs, 995 S.W.2d 102, 106 (Tenn. 1999). The intent to commit the underlying felony must exist prior to, or concurrent with, the act causing the victim's death. *Id.* at 107.

Here, the intent to commit aggravated burglary clearly existed prior to the acts causing the victim's death. Furthermore, there was a sufficient connection in time, place, and continuity of action. After unlawfully entering the residence, the defendants remained in the residence, awaited the victim's return, took money from his wallet and other property, and placed him in the bathtub.

This issue is without merit.

### 3. Variance

Defendants next claim there is a fatal variance between the underlying felony offense charged in the indictment, "burglary," and the underlying felony offense

8

proven at trial, "aggravated burglary." Again we find this argument overly technical and without merit.

A variance between indictment and proof is fatal if: (1) defendant is insufficiently informed of the charges against him, such that he is unable to prepare adequately for trial; and (2) defendant is not protected against a subsequent prosecution for the same offense. State v. Mayes, 854 S.W.2d 638, 640 (Tenn. 1993)(citing State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984)).

The indictment more than sufficiently advised defendants that the location of the burglary and the murder were the same location: the victim's home. Furthermore, the trial transcript clearly reveals defense counsel was able to adequately prepare for trial. Defendants were amply protected against subsequent prosecution for the same offense. Any alleged variance between the indictment and the proof at trial was not fatal.

### 4. Aggravated Burglary - An Underlying Felony

Finally, we also reject defendants' argument that the felony murder statute does not include "aggravated burglary" as an underlying felony since it only lists "burglary." *See* Tenn. Code Ann. § 39-13-202(a)(2). Aggravated burglary is a type of burglary and supports a felony murder conviction. *Cf.* State v. Langford, 994 S.W.2d 126 (Tenn. 1999)(affirming felony murder conviction based on underlying felony of aggravated burglary).

### IV. CONCLUSION

Based upon the foregoing, we **AFFIRM** the judgment of the trial court.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

9

_____
**DAVID G. HAYES, JUDGE**


_____
**THOMAS T. WOODALL, JUDGE**