IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session

## STATE OF TENNESSEE v. JERRY MICHAEL GREEN

**Interlocutory Appeal from the Criminal Court for Monroe County**
**No. 97-142     Carroll L. Ross, Judge**

**No. E1999-01815-CCA-R9-RL**
**October 23, 2000**

The appellant, Jerry Michael Green, proceeded to trial in the Monroe County Criminal Court for possession of more than .5 grams of cocaine with intent to deliver. Due to the State's improper cross-examination of defense witnesses, the trial court granted the appellant a mistrial. The appellant made a motion in limine to preclude the State, on double jeopardy grounds, from retrying the appellant on possession of cocaine with intent to deliver.[1] The trial court denied the appellant's motion, but granted the appellant permission to appeal its decision. This court granted an interlocutory appeal. In this interlocutory appeal, the appellant claims that double jeopardy bars a retrial because the prosecutor goaded the appellant into requesting a mistrial. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 9(b) Interlocutory Appeal; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES, and JAMES CURWOOD WITT, JR., JJ., joined.

William A. Buckley, Jr., Athens, Tennessee, for the appellant, Jerry Michael Green.

Paul G. Summers, Attorney General and Reporter, R. Stephen Jobe, Assistant Attorney General, J. Chalmers Thompson, Assistant District Attorney General, for the appellant, State of Tennessee.

### OPINION
### I. Factual Background

On December 27, 1996, undercover police officer Randy Edwards was attempting a drug buy in an establishment named Sammy O's. Officer Edwards approached the appellant's co-defendant, Lloyd Walker, and inquired about purchasing cocaine. Walker then left Officer Edwards and approached the appellant, who had just entered the building with his wife. Walker proceeded back to Officer Edwards, and the officer paid Walker for the cocaine. Walker again approached the

---

[1] The appellant made a total of three motions in limine after the mistrial. This court only granted the appellant permission to appeal the second motion, which is the subject of this opinion.

appellant, and the two men proceeded to the parking lot. Officer Edwards observed the appellant and Walker enter the appellant's truck. Captain Sam Tackett, another member of the undercover operation, was stationed in a white van in Sammy O's parking lot. Captain Tackett witnessed the exchange of an unidentified substance between the appellant and Walker while they were sitting in the vehicle. The appellant and Walker reentered Sammy O's. Walker approached Officer Edwards and handed the officer a small bag containing 0.8 grams of cocaine. The appellant was later charged with possession of more than 0.5 grams of cocaine with the intent to sell, or, in the alternative, with the intent to deliver. The case proceeded to trial in the Monroe County Criminal Court.

At the close of the State's proof, the State elected to proceed solely on the grounds of possession of cocaine with the intent to deliver. The appellant's first witness, Rhonda Hardy, claimed that she was in the appellant's truck at the time of the exchange between the appellant and Walker. Hardy stated that she was accompanying the appellant and her best friend, the appellant's wife, to Knoxville to purchase concert tickets. Hardy testified that the appellant had merely stopped by Sammy O's to pay Walker for work that had been done on the appellant's home and that only money was exchanged between the appellant and Walker. On cross-examination, the prosecutor asked Hardy if she had ever seen Officer Edwards. She stated that she had not. The prosecutor then attempted to impeach Hardy by asking if she had not twice sold marijuana to Officer Edwards. The appellant objected and after a lengthy bench conference, the trial court sustained the objection. The prosecution requested that the trial court give a curative instruction if it concluded that the questions were improper. After much discussion, the appellant expressed doubt that the damage could be cured and requested a mistrial. In exasperation, the prosecutor then told the trial court, "Then give him a mistrial." Instead, the trial court elected to give a curative instruction and directed the jury to disregard the improper questioning and any inferences they may have drawn therefrom.

The appellant testified in his own behalf. On cross-examination, the prosecutor asked the appellant if he knew the whereabouts of his co-defendant. The appellant stated that he did not. The prosecutor proceeded to question the appellant regarding the seizure of his truck by the police after the offense. The appellant objected on relevancy grounds and the trial court sustained the objection. The appellant again requested a mistrial and the trial court granted the request, over the State's objection, because of the effect of the cumulative errors.

The appellant then filed three motions in limine, only one of which is pertinent to this appeal. The appellant requested an order precluding the State from retrying the appellant, for the offense of possession of cocaine with intent to deliver, due to double jeopardy. The trial court denied the motion, but granted the appellant permission to appeal its decision. The appellant timely applied to this court for permission to appeal this issue, which application was granted.

## II. Analysis

The appellant argues that double jeopardy bars a retrial because the prosecutor goaded the appellant into requesting a mistrial. This issue was first brought before the trial court as a motion in limine and a hearing was held on September 27, 1999. The trial court denied the appellant's

motion in limine, finding that retrial of the appellant for possession of cocaine with intent to deliver would not violate double jeopardy.

In its discretion, the trial court must decide, based upon the circumstances of the case, the issue of whether to allow retrial to proceed. State v. Smith, 810 S.W.2d 155, 157 (Tenn. Crim. App. 1991). Additionally, the trial judge must balance the public's right to a "fair and complete adjudication" with the accused's rights against harassment and oppression by successive trials, as well as the accused's right to the "protection of his constitutional rights." Id. To this end, the trial court's discretion is to be reviewed by resolving any doubts in favor of the liberty of the citizen. Id.

Furthermore, this court has found that "the trial judge's findings on questions of fact are to be given the weight of a jury's verdict and are conclusive on appeal unless the appellate court finds that the evidence preponderates against his judgment." State v. Nixon, 669 S.W.2d 679, 682 (Tenn. Crim. App. 1983). Accordingly, this court does not have the authority to substitute its judgment for the judgment of the trial court when it is supported by the evidence. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983). Moreover, the appellant bears the burden, on appeal, of demonstrating to this court that the evidence preponderates against the trial court's findings. Nixon, 669 S.W.2d at 682-683.

The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Tennessee Constitution both provide that, for the same offense, no person shall be twice put in jeopardy of life or limb.[2] See also Whitwell v. State, 520 S.W.2d 338, 341(Tenn. 1975). While generally there is a prohibition against multiple prosecutions for the same offense, there are limited exceptions to the double jeopardy bar of retrial. The most common exception to the protection against double jeopardy is when there is a "manifest necessity" for a mistrial to be declared in order to serve the ends of public justice. State v. Anthony, 836 S.W.2d 600, 603 (Tenn. Crim. App. 1992).

However, there is no need to show manifest necessity when the appellant actively sought or consented to the mistrial. Id. When the appellant moves for a mistrial, he can be subjected to retrial without implicating double jeopardy. See Nixon, 669 S.W.2d at 681. An appellant's motion for a mistrial is a "deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." Oregon v. Kennedy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089 (1982)(citing United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195 (1978)). However, if the appellant was 'goaded' into requesting a mistrial, the appellant has not voluntarily relinquished his right to proceed before the first jury, and the appellant may not be subjected to retrial. See United States v. Dinitz, 424 U.S. 600, 608, 96 S.Ct. 1075, 1080 (1976); Smith, 810 S.W.2d at 157.

---

[2]In Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062(1969), the Supreme Court held that, through the Fourteenth Amendment, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution is applicable to the States.

For double jeopardy to protect an appellant who requested a mistrial from being subjected to retrial, the prosecution must *intend* for the appellant to make a motion for mistrial. Kennedy, 456 U.S. at 676, 102 S.Ct. at 2089 (emphasis added). As this court has stated, there are certain situations that indicate whether or not a prosecutor is intending to 'goad' the appellant into requesting a mistrial:

> When things are going well, the prosecutor will seldom want to provoke a mistrial. However, when the case is collapsing around the prosecutor because the witnesses are weaker than expected, adverse rulings have kept out important evidence, or key witnesses cannot be found or did not appear, the trial judge can infer the prosecutor's intent and reach the conclusion that a mistrial was actually desired. The prosecutor's explanation of his intent may be given some credence "in light of the minimum requirements expected of all lawyers." However, ex post facto explanations by the prosecutor will be of minimal assistance to the trial judge in deciding the issue of intent to provoke a mistrial.

State v. Tucker, 728 S.W.2d 27, 31 (Tenn. Crim. App. 1986)(citations omitted). Moreover, the trial court's findings of fact on this issue will be entitled to the weight of a jury verdict. Id.(citing State v. Tate, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981).

Furthermore, although the "incompetence, thoughtlessness or excitability" of the prosecutor may lead to a mistrial, these factors do not indicate the prosecutor's intent to repeatedly subject the appellant to jeopardy. Id. at 30. Accordingly, if the reason for mistrial was due to the excitability or thoughtlessness of the prosecutor, a retrial of the appellant is not barred. Id.

The appellant argues that the prosecutor's case against him was collapsing when the prosecutor began the improper questioning of the appellant's witnesses which ultimately resulted in the mistrial being granted. The appellant claims that the State's witnesses were weaker than expected and a key witness, Lloyd Walker, the appellant's co-defendant, could not be found. However, the prosecutor maintained, at the hearing on the motion in limine, that his actions were based on his frustration with untruthful witnesses.

Moreover, regardless of the problems faced by the prosecution, the State was able to withstand the appellant's motion for judgment of acquittal, demonstrating that the State's case against the appellant was still viable. The State had ample circumstantial evidence to establish that the appellant gave the cocaine to Lloyd Walker. Furthermore, the State could demonstrate that Rhonda Hardy, the best friend of the appellant's wife, was a biased witness.

The trial court found that the prosecution did not deliberately act to goad the appellant into requesting a mistrial. Although the trial court thought that the prosecutor's questions may have gone beyond permissible bounds, the prosecutor nevertheless had legitimate, tactical reasons for asking those questions. Id. at 30.

Moreover, it is clear from the record that the appellant actively pursued a mistrial on two occasions. First, after the prosecution asked Ms. Hardy if she had ever met undercover drug

agent Officer Evans, the appellant moved for a mistrial on the basis of improper questioning that would inflame the jury against the appellant. The State argued against a mistrial, claiming that if there had been error, it could be remedied by a curative instruction to the jury. After a lengthy debate on the issue, the prosecutor in frustration declared, "Then grant him a mistrial."[3] Instead, the trial court decided to give a curative instruction and directed the jury to disregard the question and any inferences they may have drawn from the question.

Second, the appellant again moved for a mistrial after the prosecution questioned the appellant about the seizure of his truck after he was charged with possession of cocaine with intent to deliver. The trial court agreed to grant the mistrial because of the effect of the cumulative errors on the jury.

In conclusion, the record indicates that the prosecutor was in an excited state of mind when he remarked, "Then grant him a mistrial." The appellant even repeatedly concedes that the prosecutor was agitated and excited.[4] The prosecutor was still frustrated with the court's rulings when he asked the appellant about his truck being seized by the police. Moreover, the prosecutor repeatedly opposed the appellant's requests for a mistrial, requesting curative instructions instead. The trial court nonetheless granted the appellant's motion for mistrial, despite the prosecution's objections. We agree with the trial court that there is no evidence in the record to indicate that the prosecutor was attempting to goad the appellant into moving for a mistrial.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

---

[3] It is this declaration by the prosecution that the appellant repeatedly refers to as proof of the State's desire to have a mistrial granted. However, the appellant overlooks the fact that the appellant initially requested the mistrial and the prosecutor's outburst was in direct response to the appellant's lengthy argument for a mistrial.

[4] In the appellant's Motion in Limine regarding this issue he states, "the [prosecutor], in a state of anger and frustration, actually offered the Court to grant the [appellant's] request for mistrial." Likewise, the appellant, at the hearing for the motion in limine, remarked that the prosecutor was "in a state of frustration" and was "a little bit flustered to say the least." Again, in the appellant's brief he states, "the prosecutor's frustration became evident when he told the court: "Then give him a mistrial."

_____
NORMA McGEE OGLE, JUDGE