**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**DECEMBER SESSION, 1999**

FILED

March 15, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. E1999-00796-CCA-R3-CD** |
| Appellee, | ) | |
| | ) | |
| | ) | **BRADLEY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. CARROLL L. ROSS** |
| **STACY ALLEN BULLARD,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Second Degree Murder)** |

FOR THE APPELLANT:

WAYNE CARTER
Assistant Public Defender
P. O. Box 1453
Cleveland, TN 37364-1453

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

PATRICIA C. KUSSMANN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

JERRY N. ESTES
District Attorney General

SHARI TAYLOE
10th Judicial District
P. O. Box 1351
Cleveland, TN 37364-1351

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

The appellant, Stacy Allen Bullard, was convicted by a Bradley County jury of one (1) count of second degree murder. The trial court sentenced the appellant as a Violent Offender to twenty-five (25) years incarceration.[1] On appeal, the appellant presents the following issues for this Court's review:

(1) whether the trial court erred in denying the appellant's motion to suppress his statement given to law enforcement authorities;

(2) whether the trial court erred in allowing the state to strike the word "deliberately" from the indictment;

(3) whether the appellant was denied his right to a fair trial as a result of juror bias; and

(4) whether the trial court erred in imposing the appellant's sentence.

After a thorough review of the record before this Court, we conclude that there is no reversible error. Therefore, the judgment of the trial court is affirmed.

## FACTS

Although the appellant does not contest the sufficiency of the evidence, a brief recitation of the facts is necessary to place the issues in the proper perspective. On the evening of May 16, 1998, the appellant and Charlie Exum went to the home of a friend, David Rogers, to socialize. While there, the appellant got into a disagreement with Joe Roark. When Roark left, the appellant told Exum, "[h]e's going to die tonight." The appellant left Rogers' house with a group of friends, and the group eventually went to another house. Shortly thereafter, the appellant and Kenyatta Isom decided to leave and buy some beer. However, when they arrived at the store, they were not able to buy

---

[1] The defendant was classified a violent offender; thus, he must serve 100 percent of his sentence. *See* Tenn. Code Ann. § 40-35-501(i)(1).

beer because the store was closed. After using the telephone, the appellant and Isom left the store and drove by Joe Roark's home.

Meanwhile, Kathy Roher and Tony Roark, Joe's brother, were sitting in a vehicle in the driveway of Roark's residence. Roher's thirteen-year old son, David Guyer, was riding his bicycle in the driveway. Roher and Roark saw a car passing by the house at a slow rate of speed, and both saw a man sitting on the passenger side door, pointing a shotgun across the hood of the car towards the Roark home. Suddenly, they heard gunshots, and David fell to the ground.

According to Isom, the shooting happened as follows:

> Stacy asked me to take him somewhere, and I told him, "Fine." I didn't know where we was [sic] going. I just drove in directions he showed me, and that was back down Wildwood. I don't know the name of the street. It was like an alley that goes up. I drove up that alley. Stacy starts to load the shell in the shotgun. I stopped. He got out the window. He faced over the top of the car to this (indicating) way, pointing towards the house. But you really, you could see a house, but it was dark there. Okay? As Stacy was hanging out the window across the car towards the house, I looked. There was a little kid coming on a bicycle. You could see him because the street light kind of flashed off of him, you know, as he was coming towards us. Okay, as I turned around to tap Stacy on the leg to tell him, "There's a kid," the gun shot. When I looked back, the kid wasn't there, or the bicycle.

David Guyer died as a result of a gunshot wound to the abdomen.

The appellant testified on his own behalf at trial. Although he and Joe Roark had previously been friends, they had a "falling out" in the early months of 1997. The appellant testified that he carried a weapon to protect himself from Roark and his friends. The appellant stated that, on the night of May 16, he asked Isom to drive him by the Roark residence. Although he did not originally intend to fire his weapon, when the vehicle approached the Roark residence and the appellant saw no one in the yard, he decided to shoot. The appellant testified that, once he fired the shot, Isom informed him that he shot a child.

The appellant stated that he did not intend to shoot anyone and did not expect anyone to be in the Roark's yard. He insisted that he was merely firing his weapon towards the ground, not the Roark residence.

The appellant was indicted with premeditated first degree murder of David Guyer; however, the jury returned a guilty verdict on the lesser offense of second degree murder. The trial court sentenced him as a Violent Offender to twenty-five (25) years incarceration. From his conviction and sentence, the appellant now brings this appeal.

## MOTION TO SUPPRESS

The appellant argues that the trial court erred in denying his motion to suppress his statement given to law enforcement authorities. He contends that he was not advised of his Miranda warnings until after he spoke with the police. He claims that because he waived his rights after the police took his statement, the waiver was invalid; thus, he maintains that his statement was not given knowingly and voluntarily.

### A.

On the day following the shooting, the appellant gave a statement to members of the Cleveland Police Department. In that statement, he denied any knowledge of the shooting. The transcript of the appellant's audiotaped statement was dated May 17, 1998, at 3:15 p.m.

Because the waiver of rights and admonition form was signed and dated at 4:20 p.m. on May 16, 1998, the appellant initially sought to suppress his statement to the police on the basis that the appellant waived his rights approximately 23 hours prior to giving his statement. He argued that because approximately one (1) day had elapsed between the signing of the waiver and his statement, the waiver was stale and ineffective.

At the suppression hearing, Detective John Dailey of the Cleveland Police Department testified that he read the appellant his rights on May 17, and then Detective

Luke Muhonen took a statement from the appellant. He stated that he wrote the incorrect date of May 16 instead of May 17 on the waiver of rights form.[2]

When the appellant learned that the detective wrote an incorrect date on the waiver and admonition of rights form, he changed his theory of suppression. At this point, he argued that the waiver was invalid because the appellant signed the waiver after he gave a statement to the police. Although he did not explain the time discrepancy, Detective Dailey insisted that the appellant waived his rights prior to giving a statement, and Detective Muhonen agreed that the appellant signed a waiver of rights form prior to speaking with him.

The appellant testified that he was asked to sign a form only once during his interview with the police. He stated that he signed the waiver after giving his statement, not before. However, when questioned by the trial court, the appellant acknowledged that he could not recall whether the police advised him of his rights prior to questioning him.

At the conclusion of the hearing, the trial court denied the appellant's motion to suppress his statement. The court found that the officers advised the appellant of his rights prior to conducting the interview and that the officers adequately explained the date/time discrepancies. The trial court further determined that the appellant effectively waived his rights prior to speaking with Detective Muhonen.

**B.**

In reviewing a trial court's denial of a motion to suppress, this Court is bound by the trial court's findings of fact unless the evidence preponderates otherwise. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). However, the law as applied to those facts is subject to *de novo* review. Id. The appellant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. State v. Odom, 928 S.W.2d 18, 22-23 (Tenn. 1996).

---

[2] The shooting occurred just prior to midnight on May 16, 1998. At approximately 4:20 p.m. on May 16, the crime had not yet occurred. Thus, the detective was certain that the appellant signed the waiver of rights form on May 17, not May 16.

## C.

The appellant argues that the record demonstrates that he was not advised of his rights prior to being interviewed by the police because the transcript of his taped statement reflects a time of 3:15 p.m., and the admonition and waiver of rights form reflects a time of 4:20 p.m. However, the trial court accredited the officers' testimony that the appellant was fully advised of and waived his rights prior to any police questioning, notwithstanding the time/date discrepancies in the two documents. Absent evidence to the contrary, this Court is bound by this finding. In addition, during trial, Detective Muhonen acknowledged that he mistakenly noted the time of the interview, but maintained that the interview was conducted after the appellant waived his rights.[3]

Moreover, at the inception of the taped interview with the appellant, Detective Muhonen asked the appellant, "Stacy we read you your rights. You understand all of that don't you? You haven't been threatened or intimidated in any way or nothing [sic] like that?" The appellant responded, "No, sir." We agree with the trial court that the appellant's response was "an acknowledgment [that] he hasn't been threatened or intimidated in any way to sign his waiver of rights."

We, therefore, conclude that the evidence does not preponderate against the trial court's finding that the appellant effectively waived his rights prior to being interviewed by the police. As a result, the trial court properly denied the appellant's motion to suppress his statement. This issue is without merit.

### MOTION TO STRIKE "DELIBERATELY" FROM INDICTMENT

In his next issue, the appellant claims that the trial court erred in allowing the state, over objection, to strike the word "deliberately" from the indictment. He alleges that one or more grand jurors may have voted to indict based upon the requirement of

---

[3] This Court may consider proof adduced both at the suppression hearing and at trial in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

"deliberately" for premeditated first degree murder. As a result, he argues that such an amendment to the indictment prejudiced his substantial rights.

**A.**

The grand jury indicted the appellant with the premeditated first degree murder of David Guyer. The indictment alleged that the appellant "did unlawfully, intentionally, deliberately and with premeditation kill David Guyer . . ." During voir dire, defense counsel made repeated references to the element of "deliberately" in phrasing his questions to the jury.

After a jury had been selected, but prior to the jury being sworn, the trial court noted that, even though the indictment charged the appellant with a deliberate killing, the first degree murder statute no longer requires the state to prove deliberation. *See* Tenn. Code Ann. § 39-13-202(a)(1). The state then moved to strike the word "deliberately" from the indictment. The defense objected, but the trial court allowed the state to strike "deliberately" from the indictment. The trial court reopened voir dire so that defense counsel could clarify the misunderstanding to the jurors, and the court also explained the mistake to the jury.

**B.**

It is well-established that when an indictment charges an offense in the language of the statute, additional averments not required by the statute do not necessarily change the offense into a different one and should be disregarded as surplusage. *See generally* Harris v. State, 82 Tenn. 485 (1884); Church v. State, 206 Tenn. 336, 333 S.W.2d 799, 809 (Tenn. 1960); Cole v. State, 512 S.W.2d 598, 601-02 (Tenn. Crim. App. 1974). First degree murder is defined as the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (1997). In 1995, deliberation was eliminated as an element of first degree murder. *Compare* Tenn. Code Ann. §§ 39-13-202(a)(1) (1991) and 39-13-202(a)(1) (Supp. 1995). Thus, because deliberation is no longer an essential element of the offense of first degree murder, the allegation in the

indictment that the appellant committed the offense "deliberately" may be properly disregarded as surplusage.

Rule 7(b) of the Tennessee Rules of Criminal Procedure provides that a trial court may permit the amendment of an indictment before jeopardy attaches over the defendant's objection if "no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced." At the time the court allowed the amendment, the jury had not been sworn, and as a result, jeopardy had not attached. *See* State v. Pennington, 952 S.W.2d 420, 422 (Tenn. 1997) (in jury proceedings, jeopardy customarily attaches when the jury is sworn). Furthermore, the allegation of "deliberately" was merely surplusage, and the deletion of this word did not charge an additional or different crime. Therefore, the trial court did not err in allowing the state to strike the word "deliberately" from the indictment.

The appellant contends that his "rights" were prejudiced because "the term 'deliberately' may have formed the basis of one or more of the grand jurors to indict." However, common sense belies the appellant's argument that the grand jury would have indicted the appellant for a premeditated, intentional and deliberate killing, but would not have indicted him for a premeditated and intentional one. If anything, the additional element of "deliberately" created a higher burden for the state to overcome in order to secure an indictment against the appellant for first degree murder. Accordingly, any error in the grand jury process caused by the addition of "deliberately" in the indictment ran to the appellant's benefit, not his detriment.[4]

Nevertheless, the appellant has certainly not established prejudice by this alleged error as the jury acquitted the appellant of first degree murder and returned a guilty verdict for second degree murder. Therefore, any error is harmless. Tenn. R. Crim. P. 52(a).

This issue has no merit.

---

[4] Moreover, as the state correctly points out, a defendant has no right to have additional elements charged to the jury which are not essential elements of the statutory offense, even though those elements were alleged in the indictment. *See* State v. Irick, 762 S.W.2d 121, 128 (Tenn. 1988).

## DUE PROCESS

The appellant next claims that he was denied his right to a fair trial as a result of pretrial publicity in this case. He argues that members of the victim's family circulated petitions asking that the state seek the death penalty for the person or persons responsible for the shooting of David Guyer. He maintains that one or more jurors may have been exposed to these petitions prior to trial, but failed to disclose his or her knowledge of such a petition. The appellant contends that the exposure to the petitions could have influenced the jurors' impartiality. Thus, he insists that he was denied his rights to due process of law.

During the sentencing hearing, the state presented approximately 100 petitions which, unbeknownst to the appellant, had been circulated shortly after the victim's death. The petitions asked the state to seek "the maximum penalty allowed by law, up to and including the death penalty, for the person or persons responsible for the drive-by murder of 13 year old David Guyer." The petitions had been signed by numerous citizens of Bradley County and the surrounding communities.

The mere exposure of jurors to pretrial publicity does not constitute constitutional error. "[I]n this age of mass media it is quite likely that jurors may have had some level of pre-trial exposure to the facts and issues involved in a case." State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). Moreover, "[t]he fact that a prospective juror has read or has heard some publicity about a case is not sufficient to disqualify him if he is otherwise qualified and he states that he can give the defendant a fair and impartial trial." State v. Gray, 960 S.W.2d 598, 608 (Tenn. Crim. App. 1997).

The appellant claims that the state improperly failed to disclose the existence of the petitions requesting the death penalty in this case. He alleges that, had he known of these petitions, trial counsel could have requested a change of venue due to excessive pretrial publicity or could have explored the issue with the venire during voir dire. However, there is no indication in the record that the appellant was prejudiced as

a result of his lack of knowledge of the petitions. The appellant does not allege that any member of the jury was in fact exposed to or signed the petition. Moreover, during the voir dire proceedings, none of the members of the jury indicated any knowledge about the offense for which the appellant was tried. Nor did any sitting jury member recognize the name of the victim or his family.

The appellant has not demonstrated that any juror who sat and rendered a verdict was prejudiced by the circulating petitions. *See* State v. Kyger, 787 S.w.2d 13, 18-19 (Tenn. Crim. App. 1989). The appellant has not shown that the jury members were biased in any respect; thus, the evidence does not support the appellant's contention that he did not receive a fair trial.

This issue is without merit.

## SENTENCING

In his final issue, the appellant contends that trial court erred in imposing his sentence. Specifically, he claims that his sentence for second degree murder was excessive because the trial court misapplied certain statutory enhancement factors and failed to consider applicable mitigating factors. Additionally, the appellant argues that the trial court erred in ordering that his sentence for second degree murder run consecutively to his sentence(s) for offenses committed in 1996 for which he was on probation.

### A.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory

directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing;
>
> (2) [t]he presentence report;
>
> (3) [t]he principles of sentencing and arguments as to sentencing alternatives;
>
> (4) [t]he nature and characteristics of the criminal conduct involved;
>
> (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
>
> (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

**B.**

In imposing the appellant's sentence, the trial court found the existence of seven (7) statutory enhancement factors: (1) that the appellant had a previous history of criminal convictions or criminal behavior, Tenn. Code Ann. § 40-35-114(1); (2) that the appellant was a leader in the commission of an offense involving two (2) or more actors, Tenn. Code Ann. § 40-35-114(2); (3) that the victim of the offense was particularly vulnerable because of age, Tenn. Code Ann. § 40-35-114(4); (4) that the appellant had a previous history of unwillingness to comply with the conditions of release into the community, Tenn. Code Ann. § 40-35-114(8); (5) that the appellant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(10); (6) that the appellant committed the offenses while on probation for another offense, Tenn. Code Ann. § 40-35-114(13)(C); and (7) that the offenses were committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(16). The trial court found no

mitigating factors to be applicable. As a result, the trial court imposed the maximum sentence of twenty five (25) years for second degree murder.

The trial court further determined that consecutive sentencing was appropriate under Tenn. Code Ann. § 40-35-115. Specifically, the court found that: (1) the appellant was "an offender whose record of criminal activity is extensive," Tenn. Code Ann. § 40-35-115(b)(2); and (2) the appellant committed the present offense while on probation, Tenn. Code Ann. § 40-35-115(b)(6). Thus, the trial court ordered that the appellant's sentence for second degree murder run consecutively to his sentence(s) for which he was on probation.[5]

## C.

The appellant alleges that the trial court imposed an excessive sentence for his second degree murder conviction. He argues that the trial court misapplied the enhancement factors and failed to consider the applicable mitigating factors. Therefore, he contends that his sentence should be reduced below the maximum.

## 1.

The presumptive sentence for a Class A felony is the midpoint of the applicable range if no mitigating or enhancement factors for sentencing are present. Tenn. Code Ann. § 40-35-210(c). However, if such factors do exist, a trial court should start at the presumptive sentence, enhance the sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as its findings are supported by the record. State v. Santiago, 914 S.W.2d 116, 125 (Tenn.

---

[5] The appellant was convicted in January, 1997, of joyriding, aggravated burglary and theft of property over $1,000. He received an effective sentence of three (3) years, suspended. In April, 1997, the appellant's probation was revoked. He applied to be placed in community corrections, but when this application was denied, he was sent to boot camp. The appellant was again placed on probation in March, 1998. Upon sentencing the appellant, the trial court revoked the appellant's probation and ordered that his sentence for second degree murder run consecutively to his three (3) year sentence for the prior offenses.

Crim. App. 1995); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

**2.**

The appellant contends that the trial court misapplied all of the statutory enhancement factors. First, he claims that the trial court should not have considered that the appellant had a previous criminal history, that he previously failed to comply with the conditions of release into the community, and that he committed the present offense while on probation for another offense. *See* Tenn. Code Ann. § 40-35-114(1), (8), (13)(C). The appellant does not contest the applicability of these factors, but argues that the trial court should have considered only one of these, not all three factors. We disagree. The record clearly supports the application of all three enhancement factors. First, the appellant has a somewhat lengthy criminal record, especially in light of his relatively youthful age at the time this crime was committed. Secondly, the appellant was placed on probation in 1997 for the offenses of joyriding, aggravated burglary and theft of property over $1,000. His probation was revoked less than three (3) months later. Finally, the record is clear that the appellant was on probation for other offenses at the time the present offense was committed. The trial court properly considered these enhancement factors.

The appellant argues that the trial court erred in applying Tenn. Code Ann. § 40-35-114(2), that the appellant was a leader in the commission of an offense involving two (2) or more actors. He claims that there is no evidence in the record that Isom, the driver of the vehicle, was involved in the criminal offense. The proof at trial showed that Isom drove the appellant to the Roark home, and when Isom saw the appellant loading his shotgun, Isom stopped the vehicle. The appellant then shot towards the Roark home from the passenger side of the automobile. After the shooting, Isom took the shotgun from the appellant. Additionally, Isom testified at trial that the state had charged him with accessory to first degree murder. The evidence supports the trial

court's conclusion that the appellant was a leader in an offense involving two (2) or more actors.

The appellant further alleges that Tenn. Code Ann. § 40-35-114(4) is inapplicable to his sentence for second degree murder. He contends that the mere fact that the victim was thirteen (13) years of age would not support application of this factor. We must agree. In State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993), our Supreme Court held that this enhancement factor is only applicable when the victim, "because of his age . . . was in fact 'particularly vulnerable,' i.e., incapable of resisting, summoning help, or testifying against the perpetrator." *See also* State v. Butler, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994). There is no evidence in the record that the victim was particularly vulnerable as a result of his age. The trial court erred in applying this factor.

The state concedes that the trial court misapplied Tenn. Code Ann. § 40-35-114(4), but argues that Tenn. Code Ann. § 40-35-114(9), which was not considered by the trial court is properly applicable. We agree. It is beyond question that "the defendant possessed or employed a firearm . . . during the commission of the offense" *See* Tenn. Code Ann. § 40-35-114(9). Furthermore, utilization of a firearm is not an element of the offense of second degree murder. *See* Tenn. Code Ann. § 39-13-210. Thus, this enhancement factor would be applicable to the appellant's sentence for second degree murder.

The appellant contends that the trial court misapplied Tenn. Code Ann. § 40-35-114(10) and (16) to his sentence for second degree murder. He claims that a high risk to human life and a great potential for bodily injury are necessarily inherent in the offense of second degree murder. Therefore, he maintains that these enhancement factors are essential elements of the offense, and the trial court erred in considering them.

This Court has previously held that Tenn. Code Ann. § 40-35-114(10) and (16) should not be applied to a sentence for second degree murder because these factors

are inherent in the offense of second degree murder. State v. Belser, 945 S.W.2d 776, 792 (Tenn. Crim. App. 1996). However, when the evidence shows that others are present who are subject to injury during the commission of the offense, application of Tenn. Code Ann. § 40-35-114(10) is appropriate. State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994). In the present case, Kathy Roher and Tony Roark were in a parked automobile in the driveway of Roark's home when David Guyer was shot in the driveway. The trial court properly applied Tenn. Code Ann. § 40-35-114(10).

With regard to factor (16), this Court has previously held this factor is also properly applicable "in situations where individuals other than the victim are in the area and are subject to injury." State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App.), *perm. to app. denied* (Tenn. 1995). However, a contrary view was expressed in State v. Charles Justin Osborne, C.C.A. No. 01C01-9806-CC-00248, 1999 Tenn. Crim. App. LEXIS 465, at *3 (Tenn. Crim. App. filed May 12, 1999, at Nashville). In Osborne, this Court held that Tenn. Code Ann. § 40-35-114(16) may not be applied merely upon a showing that persons other than the victim of the charged offense were subjected to a risk of harm. We need not decide in this case which of these two opinions is the better reasoned. It is clear that even absent application of Section 40-35-114(16) the remaining enhancement factors more than justify the appellant's sentence.

**3.**

The appellant also contends that the trial court failed to consider applicable mitigating factors when imposing sentence. Specifically, he argues that the trial court should have considered: (1) that he acted under strong provocation, Tenn. Code Ann. § 40-35-113(2); (2) that he lacked substantial judgment due to his youthfulness, Tenn. Code Ann. § 40-35-113(6); and (3) that he did not intend to shoot David Guyer, Tenn. Code Ann. § 40-35-113(13).

The appellant contends that the trial court should have considered that he acted under strong provocation because he was carrying a weapon for protection and

because he fired his weapon "as a message to the Roarks to leave him alone." However, the record does not support the appellant's claim that he fired his weapon after being provoked by Joe Roark. The appellant and Roark had a disagreement during the evening of May 16, and, several hours later, the appellant decided to drive by the Roark residence and to fire a shotgun towards the home. There is no evidence that Roark posed a threat to the appellant, nor is there any evidence that Roark was anywhere near his home at the time of the shooting. Moreover, if we mitigated the appellant's sentence because of his dispute with Roark, this Court would be encouraging vigilante acts such as this, which we are not willing to do. The trial court did not err in failing to apply this mitigating factor.

The appellant alleges that the trial court erred in failing to consider that he lacked substantial judgment due to his youthful age of twenty (20) at the time the offense was committed. *See* Tenn. Code Ann. § 40-35-113(6). However, a defendant's chronological age is not determinative with regard to this mitigating factor. "In determining whether this factor is to be applied, courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." State v. Adams, 864 S.W.2d at 33. Our Supreme Court has held that the application of this factor to a twenty-year-old defendant would not be warranted. Id. Furthermore, the record indicates that the appellant is well-acquainted with the criminal justice system, as well as with the consequences of violating the law. The appellant's criminal history, combined with his leadership role in this offense, would not support the application of this mitigating factor.

Finally, the appellant argues that the trial court should have considered as a mitigating factor that "the result of the offense was not intended." The state responds that the appellant's lack of intent should not be considered in mitigation because the jury found the killing to be unintentional through its verdict of second degree murder.

Although a trial court may not enhance a defendant's sentence with an enhancement factor that is an essential element of the offense, there is no similar prohibition against "double mitigation." *See* State v. Samuel D. Braden, C.C.A. No. 01C01-9610-CC-00457, 1998 Tenn. Crim. App. LEXIS 213, Grundy County (Tenn. Crim. App. filed February 18, 1998, at Nashville). However, even if the appellant's lack of intent to kill the victim should have been considered as a mitigating factor, this Court concludes that it would be entitled to little weight given the gross irresponsibility of the appellant's actions and the tragic results thereof. This factor clearly does not offset in any way the numerous applicable enhancement factors.

After a review of the record, we conclude that the trial court imposed an appropriate sentence of twenty-five (25) years for the Class A felony of second degree murder. This issue is, therefore, without merit.

**D.**

In addition, the appellant challenges the trial court's imposition of consecutive sentences. The appellant provides no argument in support of this issue, but merely claims that it was error for the trial court to impose consecutive sentences. The appellant has waived this issue due to his failure to provide argument, citation to authority, or references to the record in support of this allegation. Tenn. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7).

Nevertheless, we will briefly discuss this issue on its merits. Consecutive sentencing is governed by Tenn. Code Ann. § 40-35-115. A trial court may order sentences to run consecutively if it finds that one or more of the statutory criteria exists by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Under Tenn. Code Ann. § 40-35-115(b)(6), a trial court may impose consecutive sentences after determining that the appellant committed the offenses while on probation for another offense. It is undisputed that the appellant committed the present offenses while he was on probation for offenses committed in 1996. Thus, because the trial court need only find

one of the statutory criteria to exist to justify consecutive sentencing, the trial court's imposition of consecutive sentences was clearly proper in this case.

This issue has no merit.

## **CONCLUSION**

After thoroughly reviewing the record before this Court, we conclude that there is no reversible error. Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE

_____
DAVID H. WELLES, JUDGE