IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | |
| Appellant | ) | FILED:  SEPTEMBER 8, 1997 |
| | ) | |
| v. | ) | DAVIDSON COUNTY |
| | ) | |
| JEFFERSON C. PENNINGTON | ) | HON. JAMES R. EVERETT, JUDGE |
| | ) | |
| Appellee | ) | NO. 01-S-01-9607-PB-00133 |

For Appellee:                                     For Appellant:

J. BRYAN LEWIS                           JOHN KNOX WALKUP
PHILLIP A. PURCELL                  Attorney General and Reporter
Nashville, TN



**FILED**

**September 8, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

MICHAEL E. MOORE
Solicitor General

DARYL J. BRAND
Assistant Attorney General
Nashville, TN

VICTOR S. JOHNSON, III
District Attorney General

JAMES W. MILAM
Assistant District Attorney
 General
Nashville, TN

OPINION

```
JUDGMENT REVERSED,
INDICTMENTS REINSTATED,
AND CAUSE REMANDED.                              BIRCH, J.
```

We review this cause to determine whether detention immediately after arrest, purposely continued because of the accused's refusal to submit to a breathalyzer test, constitutes punishment that prevents, under double jeopardy principles, punishment upon conviction. Because we find that jeopardy did not attach to the proceedings before the judicial commissioner and because the detention, even if punitive, did not constitute punishment for the charged offenses, we find no double jeopardy violation. Accordingly, the judgment of the Court of Criminal Appeals is reversed, the indictments are reinstated, and the cause is remanded to the trial court for further proceedings.

I

Jefferson C. Pennington, the appellee, was arrested in Metropolitan-Nashville Davidson County and charged with driving while under the influence of an intoxicant[1] and driving on a suspended or revoked license.[2] Because he refused to submit to a breathalyzer test,[3] Pennington was not permitted to arrange his release immediately. Consequently, he remained in custody for approximately eleven hours. Pennington was subsequently indicted on both offenses.

_____

[1]Tenn. Code Ann. § 55-10-401.

[2]Tenn. Code Ann. § 55-50-504.

[3]According to Pennington, he refused to submit to a breath-alcohol test but was willing to have a blood sample taken.

3

Pennington filed a motion to dismiss the indictments in which he contested the policy established by the Metropolitan Nashville-Davidson County general sessions judges and judicial commissioners[4] whereby persons charged with driving while intoxicated were detained in custody for twelve hours (more or less) upon their refusal to submit to a breath-alcohol test. The existence of this policy was stipulated; stipulated also was that the policy served to promote public safety.[5]

In granting the motion to dismiss, the trial judge stated:

> The problem you have, General, is that a punishment has been imposed on a defendant without there being an adjudication of guilt. They just said everybody that comes in here and meets this classification is going to get 12 hours, period. That is a bad policy; therefore the Court will grant Mr. Ray's motion.

The intermediate court, in affirming the judgment of the trial court, concluded that detention based on the stipulated policy constituted punishment for the offenses charged. Further

---

[4]Judicial commissioners are appointed by the general sessions judges of the county and are authorized to issue arrest warrants, search warrants, and set or deny bond. See Tenn. Code Ann. § 40-5-201 et seq. An § 40-5-101 et seq.

[5]In his brief to this Court, the defendant attempts to argue that this proffered rationale for the detention was a pretext and that he was actually detained as punishment for the charged offenses. However, the stipulation was offered by the State's attorney in open court, and defendant's counsel consented. Therefore, the defendant's subsequent contention that the policy was a pretext is simply of no consequence.

punishment, the court held, would violate double jeopardy principles. We granted the State's application for Rule 11 review.

## II

The double jeopardy clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." Article 1, § 10 of the Tennessee Constitution provides that "no person shall, for the same offence, be twice put in jeopardy of life or limb."

The purpose of the constitutional protection against double jeopardy was aptly expressed by the United States Supreme Court:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Green v. United States, 355 U.S. 184, 187-188, 78 S. Ct. 221, 223, 2 L. Ed.2d 199 (1957). Jeopardy in this sense refers to the risk "traditionally associated with 'actions intended to authorize

criminal punishment to vindicate public justice.'" <u>Breed v. Jones</u>, 421 U.S. 519, 529, 95 S. Ct. 1779, 1786, 44 L. Ed.2d 346 (1975) (quoting <u>United States ex rel. Marcus v. Hess</u>, 317 U.S. 537, 548-549, 63 S. Ct. 379, 388, 87 L. Ed.2d 443 (1943).

In context, double jeopardy violations arise <u>only</u> when an individual is twice placed in jeopardy for the same offense. Customarily, in jury proceedings, jeopardy attaches when the jury is sworn, and in nonjury proceedings, jeopardy attaches when the first witness testifies. <u>Crist v. Bretz</u>, 437 U.S. 28, 35, 98 S. Ct. 2156, 2160, 57 L. Ed.2d 24 (1978); <u>Serfass v. United States</u>, 420 U.S. 377, 95 S. Ct. 1055, 43 L. Ed.2d 265 (1975). A defendant must be put in jeopardy at least once, "for only if that point has once been reached does any subsequent prosecution of the defendant bring the guarantee against double jeopardy even potentially into play." <u>Crist</u>, 437 U.S. at 32-33, 98 S. Ct. at 2159.

It is well established that jeopardy does not attach in preliminary pretrial proceedings. <u>See</u> <u>United States ex rel. Rutz v. Levy</u>, 268 U.S. 390, 45 S. Ct. 516, 69 L. Ed. 1010 (1925); <u>Collins v. Loisel</u>, 262 U.S. 426, 43 S. Ct. 618, 67 L. Ed. 1062 (1923). Rather, to be put in jeopardy, the defendant must be "subject to 'criminal prosecution' and put to trial." <u>United States v. Grisanti</u>, 4 F.3d 173, 175 (2nd Cir. 1993). The proceeding must be "essentially criminal" and constitute an action "intended to authorize criminal punishment to vindicate public justice." <u>Id.</u> (<u>citing</u> <u>Breed v. Jones</u>, 421 U.S. 519, 528, 95 S. Ct. 1779, 1785, 44 L. Ed.2d 346 (1975), and <u>United States ex rel Marcus</u>

6

v. Hess, 317 U.S. 537, 548-49, 63 S. Ct. 379, 386, 87 L. Ed.2d 443 (1943)).

In Grisanti, after a hearing, the defendant's bail was revoked. Subsequently, he was indicted for the same conduct that was the basis for the bail revocation. The defendant contended that double jeopardy barred the indictment because he had already been put in jeopardy for the indicted offense. Rejecting his contention, the Court of Appeals held that the bail revocation hearing was not essentially criminal and his subsequent detention served a "regulatory function rather than a criminal one." Id.

In the instant case, the parties stipulated that one of the purposes of the detention policy was to keep suspected drunk drivers off the road for a period of time after their arrest. In other words, the policy was intended, at least in part, to protect the public from individuals who had been arrested on suspicion of driving under the influence. This is a remedial purpose, not a punitive one, and therefore, the defendant's initial appearance before the judicial commissioner does not constitute an essentially criminal proceeding brought to "vindicate public justice."

Finally, assuming solely for the sake of argument that jeopardy did attach at Pennington's initial appearance and that the detention could be construed as punishment, the punishment was for refusing to submit to the breathalyzer test--not for the offenses for which Pennington was later indicted. Under our analysis in State v. Denton 938 S.W.2d 373, 381 (Tenn. 1996), refusal to submit

7

to a test to determine blood-alcohol content, Tenn. Code Ann. § 55-10-406(a)(3), is not the same offense as driving under the influence, Tenn. Code Ann. § 55-10-401, or driving on a suspended or revoked license, Tenn. Code Ann. § 55-50-504. The elements of the offenses are distinct from one another; the same evidence would not be used to prove the offenses; and the statutes serve different purposes.

A policy of detaining suspected drunk drivers for refusing to submit to a test to determine blood-alcohol content may, if punitive, implicate certain constitutional protections, but the double jeopardy clause is not one of them. To punish an individual without a prior adjudication of guilt is a violation of due process. See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 186, 83 S. Ct. 554, 576, 9 L. Ed.2d 644 (1963)("[P]unishment cannot be imposed 'without due process of law.' Any lesser holding would ignore the constitutional mandate upon which our essential liberties depend."). Pre-trial detention that is remedial as distinguished from punitive is permissible provided that the individual is afforded sufficient procedural due process. United States v. Salerno, 481 U.S. 739, 751, 107 S. Ct. 2095, 2103, 95 L. Ed.2d 697 (1987); Schall v. Martin, 467 U.S. 253, 264, 104 S. Ct. 2403, 2409, 81 L. Ed.2d 207 (1984); Bell v. Wolfish, 441 U.S. 520, 536, 99 S. Ct. 1861, 1872-73 60 L. Ed.2d 447 (1979).

In sum, the post-arrest detention of the defendant does not bar the State's subsequent prosecution of him for the offenses charged in the indictment. The judgment of the Court of Criminal Appeals is reversed; the indictments against the defendant are reinstated; and this cause is remanded to the trial court for

further proceedings.  Costs of this cause are taxed to the appellee for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:
Anderson, C.J.
Drowota, Reid, Holder, JJ.