# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 14, 2000 Session

## STATE OF TENNESSEE v. WILLIAM J. CLOUSE

### Interlocutory Appeal from the Circuit Court for Van Buren County
No. 1611-F    J. Richard McGregor, Judge

------

### No. M2000-00436-CCA-R9-CD - Filed July 11, 2001

------

In this case, we granted the appellant's application for an interlocutory appeal to determine whether the Van Buren County Circuit Court erred in denying the appellant's motion to dismiss the State's indictment charging him with driving on a revoked license, fourth offense, and violating the Motor Vehicle Habitual Offenders Act. Following a careful review of the record and the parties' briefs, we conclude that the State's prosecution may proceed.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES, J., filed a concurring opinion and JERRY L. SMITH, J., filed a dissenting opinion.

Douglas Thomas, Algood, Tennessee, for the appellant, William J. Clouse.

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; Dale Potter, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On November 1, 1999, a Van Buren County Grand Jury returned an indictment charging the appellant with the class A misdemeanor of driving on a revoked license, fourth offense, and the class E felony of violating the Motor Vehicle Habitual Offenders Act.[1] The appellant in turn submitted a motion to the trial court requesting the dismissal of the indictment. The trial court

------

[1]We note in passing that this court has previously held that violation of the Motor Vehicle Habitual Offenders Act and driving on a revoked license are the same offense for purposes of the guarantee against double jeopardy contained in our state constitution. State v. Green, 947 S.W.2d 186, 190 (Tenn. Crim. App. 1997); see also State v. Terron Paul Borden, No. 02C01-9802-CC-00050, 1998 WL 315937, at *1 (Tenn. Crim. App. at Jackson, June 17, 1998); cf. State v. Cloud, 588 S.W.2d 552, 553-554 (Tenn. 1979).

conducted a hearing on the appellant's motion on January 24, 2000. At the motions hearing, the appellant contended that his pre-indictment detention in the Van Buren County Jail for thirty-six hours constituted punishment for the charged offenses, thereby violating his substantive due process right to be free from punishment until adjudicated guilty and rendering any subsequent prosecution, conviction, and sentencing a violation of constitutional guarantees against double jeopardy.

In support of his contentions, the appellant presented testimony establishing that, on Saturday, May 15, 1999, Trooper Randy Crain of the Tennessee State Highway Patrol conducted a traffic stop of the appellant's vehicle at a police roadblock located in Van Buren County. Upon stopping the appellant's vehicle, the trooper submitted the appellant's name to the National Crime Information Center ("NCIC") and discovered that the appellant's license was revoked and that the appellant was a motor vehicle habitual offender. Accordingly, the trooper arrested the appellant and transported him to the Van Buren County Sheriff's Department.

At the Department, Trooper Crain and the appellant appeared before Judicial Commissioner Mozell Hayes. The judicial commissioner issued an arrest warrant, but she refused to set bail on the basis of a long-standing policy in Van Buren County whereby the General Sessions Court reserved the authority to set bail in cases involving violations of the Motor Vehicle Habitual Offenders Act. Consistent with this policy, Hayes informed the appellant that "he would have to see The Judge" in order to secure his release from jail.

At the motions hearing, Hayes explained that, when she was appointed to the office of judicial commissioner,

> [t]hey gave me a piece of paper with a bunch of charges on it and the bonds and TCA Codes, and [violation of the Motor Vehicle Habitual Offenders Act] wasn't on there. I asked the question - the first one they brought in - about a habitual offender. They said, "We don't set bonds on that; The Judge takes care of it."

Hayes noted that she had previously discussed the policy with the former District Attorney General but was unaware of the purpose underlying the policy.

Following Hayes' refusal to set bail in his case, the appellant remained in the Van Buren County Jail for approximately thirty-six hours, until Monday, May 17, 1999, the next judicial day. At that time, the Van Buren County General Sessions Court set bail in the amount of $10,000, and the appellant secured his release from jail pending further proceedings.

At the conclusion of the appellant's proof, the State disputed that the appellant had established the punitive nature of his pre-indictment detention. In agreement with the State, the trial court ruled:

> This cause came on to be heard on January 24, 2000, on defendant's Motion to Dismiss Due to Double Jeopardy and Denial of Due Process, testimony presented in open court, argument of counsel and the record as a whole from all of which this court finds that the action

of the Judicial Commissioner in denying defendant bond was not such a judicial proceeding as would place defendant in jeopardy and therefore the issue of double jeopardy does not apply. The court further finds that the refusal of the Judicial Commissioner to set bail for the defendant at the time of his arrest, in deference to a policy of the General Sessions Judge that he would personally set bail for habitual traffic offenders, which resulted in the defendant being held for approximately thirty-six hours without bail, was not punitive in nature and that the defendant was afforded sufficient procedural due process and that his bail was set without unreasonable delay.

While denying the appellant's motion to dismiss the indictment, the trial court granted the appellant's motion for an interlocutory appeal of its order pursuant to Tenn. R. App. P. 9. We likewise granted the appellant's application in this court.

## II. Analysis

In challenging the trial court's denial of his motion to dismiss the State's indictment, the appellant again contends that his pre-indictment detention was punitive and, therefore, violated his substantive due process right to be free from punishment for charged offenses until adjudicated guilty and also triggered constitutional guarantees against double jeopardy. Turning first to the appellant's substantive due process claim, no authority has been cited or found supporting the proposition that the dismissal of the appellant's indictment is the appropriate remedy absent double jeopardy concerns. Indeed, Tennessee courts have suggested the contrary proposition. State v. Pennington, 952 S.W.2d 420, 423 (Tenn. 1997); State v. Johnson, 980 S.W.2d 414, 421 (Tenn. Crim. App. 1998); State v. Kenneth A. Adams, No. W1998-00531-CCA-R3-CD, 1999 WL 1565193, at *2 (Tenn. Crim. App. at Jackson, December 21, 1999), perm. to appeal denied, (Tenn. 2000); State v. Berlin Cooley, Jr., No. 03C01-9701-CR-00009, 1998 WL 135604, at *2 (Tenn. Crim. App. at Knoxville, March 26, 1998).[2] For example, in Cooley, No. 03C01-9701-CR-00009, 1998 WL 135604, at *1, the State appealed the trial court's dismissal of an indictment charging the appellant with driving under the influence, fourth offense. The trial court, relying upon principles of double jeopardy, had ruled that the defendant's eight-hour pretrial detention precluded further prosecution. Id. We reversed the trial court's dismissal of the State's prosecution and, moreover, remarked "that concerns about the rights to bail, equal protection,[3] and due process may be warranted . . . .

---

[2]We further note that, in the analogous context of a defendant's detention without a probable cause determination by a judicial officer, we have held that the defendant was "not entitled to a remedy in this Court." State v. Phillip Todd Swords, No. 03C01-9807-CR-00239, 1999 WL 222702, **1-2 (Tenn. Crim. App. at Knoxville, April 14, 1999). Likewise, in the context of illegal arrests, this court has held that dismissal of an indictment is not the appropriate remedy. State v. Baker, 966 S.W.2d 429, 432 (Tenn. Crim. App. 1997); State v. Smith, 787 S.W.2d 34, 35 (Tenn. Crim. App. 1989).

[3]We note that the appellant did not raise in the trial court and does not raise in this appeal the issues of whether his thirty-six-hour detention implicated the rights to bail and the equal protection of the laws. In this regard, we acknowledge that the appellant mentions the right to bail in the final sentence of the "Argument" section of his brief.

(continued...)

-3-

However, . . . any such concerns do not implicate . . . Double Jeopardy . . . so as to bar further prosecution." Id. at *2 (footnote added). In sum, we will not disturb the order of the trial court on the basis that the appellant's substantive due process rights have been violated.

Turning then to the appellant's double jeopardy claim, we note that the Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This prohibition against double jeopardy is applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969); State v. Howard, 30 S.W.3d 271, 277 n.7 (Tenn. 2000). Moreover, Article 1, Section 10 of the Tennessee Constitution provides a similar guarantee.

Contemplating the application of these constitutional provisions in Pennington, 952 S.W.2d at 422, our supreme court proffered the elemental observation that, in order to "'bring the guarantee against double jeopardy even potentially into play,'" a criminal defendant must be placed in jeopardy at least once. More importantly, the court explained that,

> to be put in jeopardy, the defendant must be "subject to 'criminal prosecution' and put to trial." [In other words,] [t]he proceeding must be "essentially criminal" and constitute an action "intended to authorize criminal punishment to vindicate public justice."

Id. (citation omitted). The court noted, therefore, that preliminary pretrial proceedings generally do not place a defendant in jeopardy. Id. Correspondingly, the court indicated that jeopardy may attach to a defendant's initial appearance before a judicial commissioner if the defendant's consequent detention constitutes "punishment." Id. at 422-423.

For purposes of determining whether a defendant's initial appearance and consequent pretrial detention raised the specter of double jeopardy, this court in State v. Coolidge, 915 S.W.2d 820, 823 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Troutman, 979 S.W.2d 271 (Tenn. 1998), culled the following observation from our supreme court's substantive due process discussion in Doe v. Norris, 751 S.W.2d 834, 839 (Tenn. 1988)(citation omitted)(alteration in original):

> In determining whether the confinement involved herein is punishment, this Court must decide whether the confinement is imposed for the purpose of punishment or whether it is an incident of a legitimate governmental purpose. Where . . . no showing of an express intent to punish is made, "that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'"

---

[3](...continued)
This isolated allusion is obviously inadequate under Tenn. Ct. of Crim. App. Rule 10(b) and Tenn. R. App. P. 27. We reiterate, moreover, that the dismissal of the indictment in this case would not necessarily be the appropriate remedy for violations of the rights to bail and the equal protection of the laws.

In other words, whether a defendant's pretrial detention implicates constitutional guarantees against double jeopardy depends upon whether the defendant's pretrial detention can be assigned a remedial purpose and whether the detention is commensurate to that purpose. See also Pennington, 952 S.W.2d at 423. The burden rests on the defendant to make a threshold or "arguable" showing that his pretrial detention instead qualified as punishment. See, e.g., Coolidge, 915 S.W.2d at 823-824; State v. James E. Irwin, No. 01C01-9603-CC-00096, 1997 WL 137427, at *2 (Tenn. Crim. App. at Nashville, March 27, 1997).

In the instant case, there was "no showing of an express intent to punish." Doe, 751 S.W.2d at 839. Indeed, the policy applied by Judicial Commissioner Hayes in this case does not necessarily require the pretrial detention of defendants charged with violating the Motor Vehicle Habitual Offenders Act. Rather, the policy simply requires that a judge, rather than the judicial commissioner, set bail in those cases. Moreover, the Act, according to its own terms, is directed at defendants "who by their conduct and record have demonstrated their . . . disrespect for the laws of the state." Tenn. Code Ann. § 55-10-602(2) (1998). Therefore, inasmuch as the policy at issue results in a more careful judicial determination of bail, the policy is rationally connected to the purpose of ensuring the appellant's presence at trial,[4] and the appellant's thirty-six-hour detention until the next judicial day was not excessive in relation to this alternative purpose. Doe, 751 S.W.2d at 839. As we noted in Johnson, 980 S.W.2d at 420-421, in the context of a defendant's due process and double jeopardy claims, "[p]re-trial detention in order to 'assure a defendant's presence at trial' is a legitimate remedial purpose." Accordingly, we conclude that the appellant has failed to make even a threshold showing that his pretrial detention qualified as punishment, and the State's prosecution may proceed consistent with constitutional guarantees against double jeopardy.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's denial of the appellant's motion to dismiss his indictment for driving on a revoked license, fourth offense, and violating the Motor Vehicle Habitual Offenders Act.

_____
NORMA McGEE OGLE, JUDGE

---

[4]With respect to the judicial commissioner's apparent practice of utilizing a bail schedule, we note our holding in Swords, No. 03C01-9807-CR-00239, 1999 WL 222702, at **3-4, that assigning a defendant bail "'from a schedule posted on the wall of the jail,' with no regard to the statutory factors which should be considered to achieve the functions of bail," comports with neither the letter nor the principles underlying the Release from Custody and Bail Act.