IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2002

## STATE OF TENNESSEE v. MELVIN L. HARPER

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S43,578     Phyllis H. Miller, Judge**

**No. E2001-01089-CCA-R3-CD**
**December 12, 2002**

The appellant, Melvin L. Harper, was convicted by a jury in the Criminal Court of Sullivan County of aggravated robbery, a Class B felony. The appellant was sentenced as a Range II multiple offender to twenty years incarceration in the Tennessee Department of Correction. On appeal, the appellant challenges: (1) the sufficiency of the evidence to support his conviction of armed robbery; (2) the trial court's granting of the State's motion to amend the indictment on the day of trial; (3) the wording of the trial court's jury instructions regarding lesser-included offenses; and (4) the sentence imposed by the trial court. After a careful review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); Leslie S. Hale, Blountville, Tennessee (at trial), for the appellant, Melvin L. Harper.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Barry P. Staubus and William B. Harper, Assistant District Attorneys General, for the appellee, State of Tennessee.

OPINION
### I. Factual Background

On December 18, 1999, Margie Pickens was working at the Minute Market on West Sullivan Street in Kingsport, Tennessee. Pickens had worked for the company for twenty years and was the manager at that particular store. At 12:45 p.m., a black male wearing white silk pants and a black jacket with the word "FILA" on it entered the store and proceeded to walk around the counter. There were no other customers in the store. Pickens thought the man wanted to purchase tobacco from the rack behind the counter and asked the man if she could assist him. Instead, the man approached Pickens at the cash register and told her to "open the drawer or I'll kill you." According

to Pickens, the man "had something under his jacket" pointed at her that Pickens believed to be a gun, although she never actually saw a weapon. Pickens "froze" in fear and was unable to do as the man ordered. When Pickens failed to cooperate, the man began punching the keys on the cash register until the drawer opened. He then took the money out of the drawer and exited the store. Slightly more than one hundred dollars ($100) was taken from the cash register.

After the man left, a customer entered the store and Pickens told the customer that she "just got robbed." The customer then went outside to a payphone to call 911, while Pickens phoned her husband. The store was equipped with a security camera which recorded the incident on video tape. Pickens testified at trial that the security video was a complete and accurate representation of the events, and the tape was admitted into evidence and played for the jury. Pickens identified the appellant as the man who robbed the Minute Market.

Officer Tim Horn of the Kingsport Police Department testified that on December 18, 1999, he was called to the Minute Market "on a complaint of a robbery." When he arrived at the store, Officer Horn observed fellow officer, Detective John Blessing, questioning the victim. Although Officer Horn did not talk to the victim, he stated that she appeared "shaken quite a bit and real upset." Officer Horn testified that while at the Minute Market, he viewed the security video of the robbery and then made a perimeter search of the area surrounding the store.

Approximately two hours later, Officer Horn observed a green van with a California license plate stop, back up, and go around the block as if trying to avoid the police. Officer Horn followed the van to an alley where the officer observed a man wearing a black and white FILA sport outfit exit the vehicle. Officer Horn ordered the man to stop, but as he approached the man, the man "just turned and took off running." Officer Horn chased and eventually apprehended the suspect. Officer Horn identified the appellant as the man he arrested that day. Officer Horn testified that no weapon was found on the appellant or in the green van, nor did he observe the appellant throw anything to the ground during the pursuit. The van belonged to the appellant's sister who had recently moved to Kingsport from California.

Detective John Blessing of the Kingsport Police Department testified that on December 18, 1999, he was called to the Minute Market on West Sullivan Street. When he arrived, Detective Blessing questioned the victim and viewed the security video. According to Detective Blessing, the victim was "upset, frightened, [and] scared." Detective Blessing testified that when he questioned the victim, she told him that "she believed that [the robber] had some sort of weapon under his coat."

Detective Blessing stated that he was later called to the police department to question a suspect in the robbery. Detective Blessing identified the appellant as the man he questioned that day. According to Detective Blessing, the appellant was very cooperative and, after signing a waiver of his rights, the appellant made a statement which Detective Blessing recorded in writing. Detective Blessing testified that he then read the statement back to the appellant, who signed the statement as

accurate after initialing one spelling error. The statement, which was introduced into evidence, read as follows:

> I came down to Kingsport to visit my sister Martha Harper. I have been staying with her. Martha has been having a rough time trying to make ends meet. I had been to the Mall and I got a ride going towards Riverview. I started walking around. I found myself down next to the Minute Market. I decided to go in and rob the business. I walked in and proceeded to go behind the counter and I told the female to give me the money out of the register. I kept my hands in my coat as to make her believe I had a gun or something. I took the money out of the register and left running out of the store. I don't know how much I got but I don't think it was even a $100.00 dollars. I hid out going along the back streets until I made it to Riverview. While I was in Riverview, the police saw me and that's when I took off running. While I was running, I lost the money out of my pocket.

Detective Blessing testified that the appellant told him that he did not have a weapon when he robbed the store.

Based upon the foregoing testimony, the jury convicted the appellant of aggravated robbery and imposed a ten thousand dollar ($10,000) fine. The trial court initially sentenced the appellant as a Range III persistent offender to twenty-eight years incarceration because the appellant had "five prior Class C convictions." However, after later discovering that one of the robbery convictions was actually a conviction for solicitation to commit a robbery thereby reducing the number of Class C convictions to four, the trial court entered an order setting aside the twenty-eight year sentence and granting a new sentencing hearing. At the resentencing hearing, the trial court found the appellant to be a Range II multiple offender and sentenced him to twenty years incarceration. The appellant appeals his conviction and sentence, challenging (1) the sufficiency of the evidence to support his conviction of armed robbery; (2) the trial court's granting of the State's motion to amend the indictment on the day of trial; (3) the wording of the trial court's jury instructions regarding lesser-included offenses; and (4) the sentence imposed by the trial court.

## II. Analysis

A. Sufficiency of the Evidence

The appellant first challenges the sufficiency of the evidence to support his conviction of aggravated robbery. Specifically, the appellant asserts that "the evidence adduced at trial fails to establish beyond a reasonable doubt that [the appellant] accomplished the robbery by use of a deadly weapon or any article intended to make the victim reasonably believe that he was carrying a deadly weapon." The appellant contends that "the evidence, at most, supports a conviction for the lesser included offense of robbery."

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. Id. This court will not reweigh or reevaluate the evidence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1997). As relevant to the crime charged in this case, aggravated robbery is robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1) (1997). The appellant asserts that, based upon the evidence, the victim could not have reasonably believed that the appellant possessed a weapon. According to the appellant, the evidence showed only that the appellant demanded money while placing his hand inside his jacket. In support of his argument, the appellant cites to State v. Daryl Anthony Jemison, No. 01C01-9303-CR-00107, 1994 Tenn. Crim. App. LEXIS 199, at *6 (Nashville, Mar. 31, 1994), in which this court stated, "We have reservations about a hand in a jacket, without more, supporting a conclusion beyond a reasonable doubt that there was a 'display of [an] article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon.'"

Jemison involved an aggravated robbery in which the defendant broke into an apartment and, with his hand inside his jacket, ordered the victim to go into the bathroom and remain there until he was gone. Id. at **2-3. The victim testified that she believed that the defendant had a weapon and that "he told her to be quiet or he would shoot her." Id. at *3. Although expressing skepticism that a hand in a jacket alone would be sufficient to convict the defendant of aggravated robbery, this court upheld the aggravated robbery conviction, finding that "the jury was entitled to conclude beyond a reasonable doubt that the defendant possessed a deadly weapon from the manner in which the defendant had his hand in the jacket and his threat to shoot [the victim]." Id. at *6. The appellant contends that the facts in Jemison are "readily distinguishable" from the facts in the present case. The appellant states that the defendant in Jemison kept his hand in his pocket and threatened "to shoot" the victim, but in the present case, "the appellant made no statements about a weapon before, during, or after placing his hand in his pocket." The State, on the other hand, contends that the evidence in the present case "was stronger than the evidence presented in [Jemison]." We find the two cases to be indistinguishable.

In Jemison, the defendant kept his hand in his jacket while threatening "to shoot" the victim. Id. at *3. In the present case, Pickens testified that the appellant had an object under his jacket which he pointed at Pickens while ordering her to "open the drawer or I'll kill you." There is only a slight difference in the wording of the threats. While the word "shoot" obviously led the

victim in <u>Jemison</u> to believe that the defendant had a gun, we have no doubt that the appellant's threat to "kill" Pickens could have led Pickens to believe that the appellant was holding a weapon under his jacket. As in <u>Jemison</u>, we conclude in the instant case that "[t]he jury was entitled to accredit the [appellant's] threat and to infer from it and his hand positioning that he was armed." <u>Id.</u> at *6.

In determining the evidence necessary to establish aggravated robbery, the appellant also asks this court to consider the aggravated robbery statutes of Arizona, Georgia, and Michigan, which the appellant asserts are similar to that of Tennessee.[1] According to the appellant, these states "have made specific findings as to the type of evidence required to establish the offense of aggravated robbery." However, because our law is clear on the matter, we see no need to look to the law of other states.

## B. Amendment of the Indictment

The appellant next contends that the trial court erred in granting the State's motion to amend the indictment on the day of trial.[2] Prior to the amendment, the indictment charged that on December 18, 1999, the appellant

> did unlawfully, feloniously, intentionally, knowingly, by violence and by the use of an article used and fashioned to lead Margie R. Pickens to reasonably believe it to be a deadly weapon, obtain approximately $100 in U.S. currency owned by Store No. 4 of Minute Markets, Inc., a corporation, from the person of Margie R. Pickens, by placing the said Margie R. Pickens in fear, without the effective consent of the owner and with the intent to deprive the owner thereof, contrary to

---

[1] Arizona Revised Statute section 13-1904(A) (2001) provides that:
> A person commits armed robbery if, in the course of committing robbery . . . , such person or an accomplice:
> (1) Is armed with a deadly weapon or a simulated deadly weapon; or
> (2) Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

Georgia Code Annotated section 16-8-41 (2002) provides that:
> (a) A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.

Michigan Compiled Laws section 750.529 (2002) defines armed robbery as robbery "with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon."

[2] The motion to amend the indictment was filed on September 22, 2000, three days before trial. On September 25, 2000, the trial court heard the motion prior to jury selection.

Tennessee Code Annotated, Section 39-13-402, a Class B felony, and
. . . [a]gainst the peace and dignity of the State of Tennessee.

The State moved to amend the indictment by deleting the words "by violence and by the use" and inserting the words "by the display." The trial court granted the State's motion over the appellant's objection that the amendment "change[d] the factual theory of the State's proof."

The United States and the Tennessee Constitutions require that an indictment inform the accused of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. An indictment satisfies the constitutional requirement of notice "if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997); Tenn. Code Ann. § 40-13-202 (1997).

Rule 7(b) of the Tennessee Rules of Criminal Procedure provides that an indictment may be amended in all cases with the consent of the defendant. However, where a defendant objects to an amendment, the trial court may permit the amendment only "if no additional or different offense is charged, no substantial rights of the defendant are prejudiced, and jeopardy has not attached." State v. Kirkland, 696 S.W.2d 544, 545 (Tenn. Crim. App. 1985); Tenn. R. Crim. P. 7(b). In a jury trial, jeopardy attaches when the jury is sworn. State v. Pennington, 952 S.W.2d 420, 422 (Tenn. 1997). The decision to grant or deny a motion to amend an indictment is left to the sound discretion of the trial court, and this court will not alter that decision unless such discretion was abused. Kirkland, 696 S.W.2d at 545.

On appeal, the appellant argues that he is entitled to a new trial because the amendment prejudiced his rights by absolving the State of proving the elements of "violence" and "use." The appellant claims that, because his "defense would have [] focused upon defending against the allegation of 'violence,' and the actual use, rather than display, of such an article[,]" the trial court should have either denied the State's motion to amend or continued the trial in order to provide the appellant time to prepare a proper defense based upon the amended indictment.[3] The State asserts that "a review of the [aggravated robbery] statute reveals that the amendment neither changed the offense charged nor affected the substantial rights of the [appellant]." We agree.

As previously noted, aggravated robbery is defined, in pertinent part, as robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). To establish robbery, the State was required to prove beyond a reasonable doubt that the appellant obtained the money from the person of another by violence *or* putting the person in fear, not both. Tenn. Code Ann. § 39-13-401(a). Therefore, the deletion of the phrase "by violence" in the amended indictment did not prejudice the appellant because the original indictment also alleged that the appellant obtained the money "by placing the said Margie R. Pickens in fear." The State was not

---

[3] We note that the appellant did not request a continuance following the amendment of the indictment.

required to prove "violence." Furthermore, in granting the motion to amend the indictment, the trial court noted that the evidence presented at the suppression hearing made it clear that the State was not relying on a theory of "violence."

To elevate robbery to aggravated robbery, the language in the original indictment provided that the robbery was accomplished "by the use of an article used and fashioned to lead Margie R. Pickens to reasonably believe it to be a deadly weapon." The amended language alleged that the robbery was accomplished "by the display" of such an article. The State contends that the "amendment merely conformed the language of the indictment to the language of the statute." We agree. Regardless, the original indictment referenced the statute defining the offense of aggravated robbery and, therefore, was sufficient to place the appellant on notice of the charged offense. State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000) (noting that "recent decisions of this Court hold[] that an indictment which references the statute defining the offense is sufficient and satisfies the constitutional and statutory requirements of Hill"). We conclude that the appellant was not prejudiced by the amendment of the indictment. This issue is without merit.

C. Jury Instructions

Next, the appellant challenges the wording of the trial court's jury instructions regarding lesser-included offenses. Specifically, the appellant argues that, in instructing the jury, the trial court did not specify that the offenses of robbery and theft under five hundred dollars ($500) were "lesser-included offenses" of aggravated robbery. The State contends that the trial court properly instructed the jury.

In Tennessee, "a defendant has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000). We review a jury charge to determine whether it fairly submitted the legal issues involved and did not mislead the jury. State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

In charging the jury, the trial court informed the jury that "[i]n Count I of this case you are charging three charges against the defendant, Aggravated Robbery, Robbery, Theft Under Five Hundred Dollars ($500.00). You cannot find the defendant guilty of more than one offense. You may, however, find the defendant not guilty of all offenses." Thereafter, the trial court instructed the jury as to the elements of the indicted offense and each lesser-included offense. Following the instruction on each offense, the trial court further instructed the jury, "If, however, you have a reasonable doubt as to the defendant's guilt of [insert offense] then your verdict must be not guilty as to [that offense] and you shall proceed to determine whether the defendant is guilty or not guilty of [next offense]." During deliberations, the jury submitted the following question to the trial court, "What is the minimum and maximum prison time sentences for (1) Aggravated Robbery, (2) Robbery." The trial court responded, "The Court cannot instruct you as to any possible sentence for an offense. Such information is not relevant to the determination of guilt or innocence."

The appellant contends that, pursuant to Tennessee Pattern Jury Instruction 41.01, the following jury instruction should be given when the offense charged contains more than one lesser-included offense:

> If you have a reasonable doubt as to the defendant's guilt of [insert offense charged] as charged in [count ___ of] the indictment, then your verdict must be not guilty as to this offense, and then you shall proceed to determine [his][her] guilt or innocence of the *lesser included offense* of [insert next lesser included offense in order].

(footnote omitted) (emphasis added). However, contrary to the appellant's argument, pattern jury instructions are "merely patterns or suggestions" and, as such, trial courts are not required to recite their language. Hodges, 944 S.W.2d at 354.

The State asserts that the trial court properly instructed the jury, citing State v. Deandrade Phillips, No. E2000-00153-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 190, (Knoxville, Mar. 15, 2001), in which this court upheld similar, if not identical, jury instructions. In Phillips, this court concluded that "the trial court's instructions were clear, accurate, and complete and [we] do not believe that the jury was confused by the included offenses not being described as lesser included." Id. at *20. Although the appellant acknowledges our holding in Phillips, he claims that the present case is distinguishable in that the instructions in the present case clearly confused the jury, as evidenced by the jury's question to the trial court. We disagree.

We do not find the jury instructions confusing or misleading. First, the trial court instructed the jury on all three offenses and further instructed that it could convict the appellant of only one offense or it could acquit the appellant of all offenses. Second, the trial court instructed the jury as to the elements of each offense and clearly instructed that if there was reasonable doubt as to one offense, the jury was required to find the appellant not guilty as to that offense and move on to the next offense. Finally, in response to the jury's question, the trial court informed the jury that the potential sentences were irrelevant in determining guilt or innocence. We conclude that the trial court did not err in instructing the jury.

D.  Sentencing

Finally, the appellant argues that the sentence imposed by the trial court was excessive. Specifically, the appellant contends that he should not have been sentenced to twenty years incarceration, the maximum sentence for a Range II offender convicted of a Class B felony. At the initial sentencing hearing, the evidence presented consisted of the presentence report, a copy of the appellant's prior convictions, and a copy of the statement the appellant made to Detective Blessing. At the resentencing hearing, the parties presented argument, but otherwise relied upon the evidence presented at the initial hearing. Based on this information, the trial court applied three enhancement factors to which it afforded great weight, i.e., that the appellant had a prior history of criminal behavior, that the appellant had an unwillingness to comply with sentences involving release into the community, and that the appellant committed the instant offense while on parole. Tenn. Code Ann. § 40-35-114(1), (8), and (13) (Supp. 2001). As a mitigating factor, the trial court considered the appellant's voluntary confession of guilt. Tenn. Code Ann. § 40-35-113(13) (1997).

However, the trial court did not afford this factor enough weight to reduce the appellant's sentence because the appellant testified during an offer of proof at trial that Detective Blessing, who recorded the statement in writing, "made up" part of the statement.

When an appellant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). However, this presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appellant to show that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

In conducting our review, this court must consider (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to the sentencing alternatives; (4) the nature and characteristics of the offenses; (5) any mitigating or enhancements factors; (6) any statements made by the appellant on his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (Supp. 2002); see also Ashby, 823 S.W.2d at 168.

The presumptive sentence for a Class B felony is the minimum within the applicable range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If the trial court finds that such factors do exist, the court must start at the presumptive sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). There is no mathematical formula for valuating factors to calculate the appropriate sentence. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76.

In challenging the length of his sentence, the appellant first asserts that the trial court erred in applying enhancement factor (13), i.e., that the felony was committed while the appellant was on parole. Tenn. Code Ann. § 40-35-114(13). The appellant argues that, in applying this factor, the trial court relied only on the presentence report, "[no] fugitive warrant nor any other record substantiating this allegation was introduced [at sentencing]." Contrary to the appellant's argument, the trial court is required to consider the presentence report in sentencing a defendant. Tenn. Code Ann. § 40-35-210(b)(2). Moreover, the appellant had the right to challenge the information contained in the presentence report at either of the two sentencing hearings by presenting evidence to the contrary, but the appellant presented no such evidence. Tenn. Code Ann. § 40-35-209(b) (Supp. 2002). Instead, at the initial sentencing hearing, the appellant through counsel merely objected to the trial court's application of enhancement factor (13), arguing that "[t]here's no real proof before the Court of what his status is. . . . They could have discharged him. He could have earned enough sentencing credits somehow. We don't know Illinois law." Rather than speculate,

the appellant should have produced evidence demonstrating that he had served his sentence for the prior conviction and, therefore, was not on parole at the time of his arrest in the instant case. See State v. Johnny Benard Jones, No. 02C01-9801-CC-00026, 1998 Tenn. Crim. App. LEXIS 1292 (Jackson, Dec. 21, 1998). We find the trial court did not err in considering the only evidence before it regarding enhancement factor (13).

The appellant also contends that, if this court finds that the trial court erred in applying enhancement factor (13), the presence of only two enhancement factors, (1) and (8), is not sufficient to sentence the appellant to the maximum sentence. Because we have determined that the trial court properly enhanced the appellant's sentence in respect to factor (13), this argument is moot.

Next, the appellant asserts that "his cooperation was substantial in voluntarily admitting to his involvement in the crime, which provided great assistance to the authorities." The appellant claims that, based on his voluntary confession, he is "entitled to a downward departure from his sentence." We disagree. As previously noted, "the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Boggs, 932 S.W.2d at 475-76. The trial court determined that it would not afford the appellant's voluntary confession enough weight to reduce his sentence because the appellant alleged that Detective Blessing "made up" the part of the confession which stated that the appellant "kept [his] hands in [his] coat as to make her believe [he] had a gun or something." Additionally, the trial court noted that the appellant had little to lose by confessing because the entire crime had been recorded by the store's security video camera. We find that the trial court properly exercised its discretion in affording the mitigating factor little or no weight.

Finally, the appellant argues that the trial court should have considered statutory mitigating factor (1) in determining the appropriate sentence, i.e., that the appellant's conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). According to the appellant, "[s]ince the proof was insubstantial that [the] appellant possessed a weapon, the verbal threats alone should not constitute a threat of serious bodily injury." However, the appellant cites no authority in support of this argument. Even assuming that the trial court should have considered this mitigating factor, the trial court was within its discretion in affording great weight to the appellant's criminal history, the appellant's unwillingness to comply with sentences involving release into the community, and the fact that the appellant committed the instant offense while on parole. Boggs, 932 S.W.2d at 475-76. Thus, we cannot conclude that the trial court improperly sentenced the appellant.

### III. Conclusion
Based upon the foregoing, we affirm the judgment of the trial court.

_____

NORMA McGEE OGLE, JUDGE